[S. F. No. 15283. In Bank.—May 6, 1935.]

HENRY SALOT, Petitioner, v. THE STATE BAR OF
CALIFORNIA, Respondent.

Henry Salot, *in pro. per.*, and Robert F. Shipper for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—The petitioner seeks to be admitted to practice as an attorney at law in California, notwithstanding he has failed to be certified by the committee of bar examiners of The State Bar (Stats. 1931, p. 1761, as amended) as possessing the necessary legal requirements for admission. Upon the petition being filed, this court cited The State Bar to show cause why this court should not admit petitioner as an attorney at law upon the showing made, notwithstanding lack of proper certification by the committee of bar examiners. The State Bar has filed its return and produced all available records pertinent to the matter to be considered.

This proceeding being in the nature of a review, the burden is on the petitioner to show wherein the decision of the committee of bar examiners is erroneous and unlawful, and unjustly discriminates against the petitioner.

At the outset, it may be stated that petitioner has consistently failed in seven successive bar examinations. This court will not inquire into petitioner's inability to pass any or all of such examinations, and unless he can show that he was prevented from passing the bar examinations through fraud, imposition or coercion, or that he has been treated unfairly or unjustly, this court will not listen to his complaint. (*Matter of Investigation of Conduct of Bar Examiners,* 1 Cal. (2d) 61 [33 Pac. (2d) 829].) Nor will

this court exercise its power in contravention of the adverse recommendation of the committee of bar examiners except upon convincing showing that "adverse recommendation is not based upon sound premises and valid reasoning". (*Spears* v. *State Bar*, 211 Cal. 183, 192 [294 Pac. 697, 72 A. L. R. 923].)

Petitioner relies specifically upon two examinations given by the committee of bar examiners, those of August, 1930, and August, 1932, as examinations wherein he claims there was unfairness, arbitrariness, fraud and dishonesty in the marking and grading of petitioner's answers, thereby preventing him from attaining a passing grade.

As to the examination of August, 1930, the records show that it consisted of 30 essay-type questions, each graded on a basis of 10 points, or a total of 300 points. Prior to this examination there had been propounded usually 40 essay-type questions at each examination. At this examination, in an effort to produce a more comprehensive examination, the experiment was tried of substituting, for 10 of the usual essay-type questions, 200 "Yes—No" questions, to be given in four groups of 50 each, each group to be graded on a basis of 50 points, making a total of 200 points, which was to be given a weight of 100 points, obtained in each instance by dividing by two the applicant's total on the four groups. The oral examination was to be graded on a basis of 100 and given a weight of 50 points, obtained in each instance by dividing the applicant's grade by two. However, in view of the experimental nature of the "Yes—No" questions and the usual lack of uniformity of the oral examination, the committee decided, ultimately, as it had the power to do, that in fairness to all applicants, the "Yes—No" questions and the oral examination, as a basis of marking this examination, be abandoned and the examination graded solely on a basis of 10 points for each essay-type question, or a total of 300 points, the passing grade to be 69 per cent or 207 points, with the added concession, that applicants receiving 206½ points should be considered as having passed. The petitioner received 194½ points, or 12 points less than the passing number. In what way this worked a discrimination against petitioner it is impossible to conceive, the same standard of marking being applicable to all candidates taking the examination. It is the peti-

tioner's contention, based upon a misinterpretation of information given him by an employee, that taking the "Yes—No" questions, and the oral examination with the essay-type questions, he received a passing grade of 303 points. As pertinent to what happened at this examination, we quote from the affidavit of Delger Trowbridge, chairman of the committee of bar examiners at that time:

"That he was Chairman of the Committee of Bar Examiners of the State Bar of California from January 11, 1930 to June 30, 1931, during which time the August, 1930, bar examination was held and the results thereof determined.

"That the passing grade at said examination was fixed by the Committee of Bar Examiners pursuant to the authority vested in it at the time at 69 per cent of the total maximum grade of 300 points on the 30 essay-type questions given in said examination or 207 points, with the added provision that any applicant who received within one-half point of said 207 points, or 206½ points, should also pass.

"That at said August, 1930, bar examination 200 'Yes—No' questions and an oral examination were also given, but in determining the success or failure of the applicants at said examination the Committee of Bar Examiners dropped out of consideration the 'Yes—No' questions and the oral examination, because of the experimental nature of the former and the lack of uniformity in the marking of the latter.

"That consequently the success or failure of an applicant at said examination turned entirely on his grade on the 30 essay-type questions and no person was declared to have passed the examination unless he received 206½ points or more on said essay-type questions."

The petitioner states on information and belief that he received a passing grade in the August, 1930, examination, but beyond his own statement there is no proof, nor was any offered, that such was the fact. Even though it be admitted, which it is not, that he received a rating of 303 points on the 30 essay-type questions, in combination with the "Yes—No" questions, and oral examination, and that the passing grade was 273 points, it is shown that for sufficient reasons, and because of the experimental nature of the "Yes—No" questions and the absence of uniformity in the markings on the oral examinations, that in fairness to

the applicants at that examination, it was determined that the written "Yes—No" questions and the oral examination be excluded from consideration and the markings based upon the 30 essay-type questions alone. This ruling applied to all applicants alike, including the petitioner, who as the record shows received a rating of only 194½ when the minimum requirement was 206½. The record further shows that had the rating been based upon all three types of questions, a minimum passing grade of 69 per cent would have necessitated the making of 310½ points, whereas, upon petitioner's own showing he received but 303 points.

In the August, 1932, examination we have the same confused affirmations, that petitioner received 2,322 1/6 points, that the passing grade was 2,345 points, or 70 per cent, that certain papers between 69 and 70 per cent, designated as border line cases, had been reviewed, including petitioner's who had attained a grade of 69 per cent, to ascertain if better markings could not be given to reach the required minimum per cent of 70, but that petitioner's markings were not changed; that subsequently a review of papers of applicants receiving marks from 65 per cent to 69 per cent was had, and the petitioner requested the chairman of the board of examiners that his paper be again reviewed, but was informed by the chairman that his paper having fallen within the 69 to 70 per cent classification had already been reviewed and could not be reviewed again. The petitioner then petitioned the board of examiners for a second review, which petition was denied for substantially the same reason, and such second review we may assume would not only have been unfair to other applicants in the same classification as petitioner but also would have resulted as did the first. The statement of petitioner that "he verily believes that had his examination papers been reviewed, he would have received a passing grade" is but a conclusion of the petitioner's, and the fact stands out that 52.7 per cent of those who took the examination did pass. We are of the opinion on the state of the record before us that petitioner was accorded every privilege granted to all other candidates similarly situated, and upon equal terms with such other applicants. No facts are stated that would lead us to conclude that anything but sound premise and

valid reason actuated the action of the committee of bar examiners.

The petitioner also alleges upon information and belief that answers to the essay-type questions were based upon what he erroneously calls "model answers" prepared beforehand for the guidance of the examiners, and that one of these so-called "model answers" was wrong, and that had he been credited with points in conformity with a correct answer that petitioner would have attained sufficient additional points to make a passing grade.

As to this contention, we quote from the return of The State Bar:

"There is no such thing as a 'model' or 'proper' answer to any question given at any bar examination. We refer the court to paragraph II of the Return of the Board of Governors and the Committee of Bar Examiners of the State Bar in Miscellaneous No. 1280, 'In the Matter of Investigation of the Conduct of Bar Examination', and to Exhibits 4, 5 and 7 filed in support thereof, and to subparagraph 3 of paragraph IV of said Return, for a further statement of the facts with respect to the alleged 'model' answers. At page 4, line 4, of said Return it is said: 'As will appear from Exhibit 5 setting forth the instructions given to the readers, no model answers were used in connection with said examination, for the reason that in fairness to the applicants their answers were evaluated on the basis of the knowledge of the points of law involved and the power of reasoning exhibited in the answer rather than in accordance with any model or set form of answer.' The same instructions were given with respect to the grading of the papers of the applicants who took the August, 1932, examination of which petitioner complains."

As unsubstantial is the allegation of petitioner that said board of bar examiners has at all times failed and refused to assist the petitioner in ascertaining the true situation with respect to his examinations and grades. An examination of the entire record refutes such a contention, and on the contrary shows that much of the complaint of petitioner is based upon a zealous effort on the part of the employees of The State Bar to furnish petitioner with all information they thought could be useful to petitioner even to the extent of stepping over the border line of information

properly available to applicants and giving information which petitioner misinterpreted and upon which he bases his claim of unfair treatment. We are satisfied petitioner was afforded every means of ascertaining the situation with respect to his examination and his grades. ▮ Unfortunately, any question with reference to the correctness of any answer is now necessarily moot because the answers of petitioner to questions propounded at the several examinations petitioner has taken have been destroyed in common with the answers of all other applicants pursuant to the custom of destroying all examination books subsequent to the four-month period of inspection open to applicants following the declaration of the results of the examination, a custom compelled by lack of storage facilities of The State Bar offices, there being between ten and twelve thousand books at each examination. Statements of petitioner that such records were deliberately destroyed by the secretary of The State Bar to thwart petitioner in his effort to secure further consideration of his petition are unjustifiable. ▮ Careful consideration of the record refutes the claim of petitioner that he has been made the victim of unfairness, arbitrariness, fraud and dishonesty in the marking and grading of his papers. So is petitioner's claim of having been unjustly discriminated against, which is utterly without merit, the only semblance of verity being based upon petitioner's misinterpretation of information purported to have been received from transient employees and not from members of the committee of bar examiners of the board of governors of The State Bar.

▮ The argument of petitioner of his case before this court was performed with commendable clarity and conciseness, but we cannot accept such as sufficient evidence of his general knowledge of the law, especially in view of his repeated failures to pass examinations which others have passed.

The petition is dismissed.