[S. F. No. 16896.   In Bank.   Aug 13, 1943.]

In re EDWARD E. GEHRING, on Disbarment.

Gardiner Johnson and A. W. Carlson for Petitioner.

Ben Aiken, Jr., and Jerold E. Weil for Respondent.

THE COURT.—Petitioner seeks reinstatement as an attorney at law. He was disbarred by order of this court on November 1, 1932, made upon recommendation of the Board of Governors of The State Bar, approximately twenty-seven

years after his admission to practice. No review of the board's decision was sought at that time. The grounds for the disbarment were that petitioner admittedly commingled certain estate funds with funds of his own and converted a portion of the estate funds to his own use. The disbarment record also discloses two companion proceedings in which suspension was recommended on the ground that petitioner received attorney's fees and costs in two separate divorce matters but failed to file suit or to return the money in either instance.

Petitioner, now approximately 68 years of age, practiced law in Alameda County, and has continued to reside there since he was disbarred. The State Bar Local Administrative Committee of that county, appointed by the Board of Governors to investigate, hear evidence, and make findings in connection with petitioner's application for readmission, reported that by reason of his failure to include in his petition certain information required by rule 39 of the Rules of Procedure of The State Bar, they felt that petitioner had not acted in good faith in submitting the petition. Consequently they recommended against reinstating him. A minority report, with favorable recommendation, was also presented. After a further hearing before the Board of Governors, that body voted nine to four against recommending that petitioner be readmitted. Petitioner now seeks a review by this court and an order of readmission notwithstanding the adverse recommendation. The record, however, impels us to the conclusion that the position of the examining committee and the Board of Governors is well taken and that the petition for reinstatement should be denied.

Rule 39 of the Rules of Procedure of The State Bar requires that a petition for reinstatement shall contain, among other things, "(3) . . . (i) a statement, for the period of rehabilitation, showing dates, general nature and ultimate disposition of every matter involving the arrest or prosecution of petitioner for any crime, whether felony or misdemeanor . . . ; (j) a statement stating whether or not any applications were made during said period for a license requiring proof of good character for its procurement . . . , and the disposition thereof."

As first presented to The State Bar for filing, petitioner's petition contained no statement as to "whether or not" during the period following his disbarment he had applied for a license "requiring proof of good character for its procurement." He was informed that his petition could not be filed until this omission was supplied. Either on this occasion or

710

at a preceding time, he was given a copy of the Rules of Procedure governing such applications, which rules contained a form calling for a "statement of any arrest" and a direct statement as to "whether *or not*" any application for a license of the type mentioned had been made. Petitioner added to the petition the statement that he had, in about May, 1941, applied for a license as a real estate broker in this state, but that by reason of his disbarment the application had been denied. The petition was then, on April 14, 1942, accepted for filing, but it contained no statement concerning any "matter involving the arrest or prosecution of petitioner for any crime," as required by subdivision (3) (i) of rule 39, quoted hereinabove, and as said to be suggested in the supplied form. In this respect the petition did not on its face appear to be defective, because the form in calling for a "statement of any arrest" did not require an express negation of arrest if in fact none had occurred.

On June 19, 1942, petitioner called at the office of the examiner appointed by The State Bar in this proceeding, and discussed the application with him. The examiner, who in the performance of his duty had written petitioner suggesting an interview, testified at the hearing before the Board of Governors that he informed petitioner that "it wasn't necessary for him to give me any information; that I was representing The State Bar and would use any information I could obtain in this matter. After discussing his petition with me, I asked Mr. Gehring the flat question, 'Have you ever been arrested?' The answer was 'No.' " The examiner further testified that at the time of such interview he had no knowledge that petitioner had been arrested at any time following his disbarment.

At the hearing before the local administrative committee (on July 21, 1942), petitioner made no mention of the arrests in his direct testimony but on cross-examination testified as follows:

"Q. Mr. Gehring, have you ever been arrested? A. Once. Q. When was that? A. Quite a few years ago. THE CHAIRMAN: Q. Approximately when? A. Five or six or seven years ago. MR. AIKEN [the Examiner]: Q. What was the nature of the arrest? A. I had written a policy of insurance. The company refused to accept it and I returned the premium, sent it back, either a money order or cashier's check and somehow he didn't get it and he had a warrant issued. The money was there long before the arrest was made, or anything

of that kind. Then I told him where the money was. Q. What happened after that? A. That is all. Q. The case was dismissed? A. Yes. Q. Is that the only time you have been arrested? A. I was arrested in San Francisco. . . .''

It appears further that the first of the two arrests thus finally admitted by petitioner occurred on February 5, 1934, pursuant to an indictment for grand theft (a felony), returned by the Grand Jury of the City and County of San Francisco on December 8, 1933. On April 5, 1934, the case was dismissed by the superior court upon motion of the district attorney after hearing the evidence of the complaining witness. Petitioner, in a letter to the local administrative committee, dated September 5, 1942,—several weeks after the hearing of July 21—stated that he spent six days in the county jail in connection with that arrest. The second arrest was on November 30, 1934, on misdemeanor charges of petty theft and of a technical violation of section 633a30 of the Political Code (now sec. 1680 of the Ins. Code). Petitioner posted $50 bail and appeared in the justice's court on five different occasions during December, 1934, and January, 1935, on this matter, but upon his failure to appear on February 11, 1935,—the day finally set for trial—his bail was ordered forfeited and the cause was dropped from the trial calendar, to be reset on motion of the district attorney. Apparently no further proceedings have since been taken in the case.

Petitioner admits that he read and ''followed'' the rules of The State Bar in preparing his petition for reinstatement, but in attempted explanation of his failure to include in the petition a statement concerning these arrests he testified before the committee that ''I figured that as long as the matters had been disposed of there was nothing at all. There was no record. I am willing to amend the petition. Q. You figured at the time that there was no need because we wouldn't be able to find them? A. No. Where the matter was dismissed and a man has had a complaint filed against him, he would be in the same position he was before the complaint was filed. Q. Don't these records indicate that you were arrested? A. I am not trying to argue about the proposition. That wasn't my idea. I had no fear because I had no fear of it. I figure what I did was nothing particularly wrong.''

That explanation apparently depicts Mr. Gehring's estimate of his duty in the premises. His conduct, including such appraisal of his duty, appears to manifest one or the other or

both of two things: 1. He sought, deliberately, to conceal material facts from the examiner and from the committee. 2. If he failed to recognize the materiality of such facts he disclosed thereby a lack of that high quality of intellectual discernment and integrity which is required of attorneys at law. We may appropriately repeat here what we said in *Spears* v. *State Bar*, 211 Cal. 183, 187 [294 P. 697, 72 A.L.R. 923]: "At the threshold of the discussion it should be stated as definitely settled in this state that irrespective of the outcome of any charges preferred against an applicant for admission to practice law in this state, whether he be convicted, acquitted or the charges dismissed, a duty rests upon said applicant to make a full disclosure of such charges to the committee charged with the duty and the responsibility of investigating his fitness to practice law in this state. We are aware that this requirement calls for a high degree of frankness and truthfulness on the part of the attorney making application for admission to practice law in this state, but no good reason presents itself why such a high standard of integrity should not be required. This duty to make a full disclosure is an absolute duty and a justification for a failure to perform it is not to be found in the excuse that an applicant has been advised by some person, no matter how high in official position that person may stand, that such disclosure is not necessary, nor by the sophistic argument that the charges having been dismissed or the disbarment proceedings dropped, in effect no charges were preferred or proceedings instituted, and applicant is, therefore, justified in stating under oath that no charges were in fact preferred or proceedings for disbarment instituted." (See, also, *In re Kepler*, 79 Cal.App. 639, 640 [250 P. 701].) The above-quoted statement relative to an application for original admission applies with at least equal force to a motion for readmission. (See *Kepler* v. *State Bar*, 216 Cal. 52, 55 [13 P.2d 509].)

From what has been said it appears that the recommendation of the Board of Governors against the readmission of petitioner is supported by the evidence. Petitioner's showing on this application for review and readmission notwithstanding the adverse recommendation is not "a convincing showing" that "such adverse recommendation is not based upon sound premises and valid reasoning." (See *Spears* v. *State Bar, supra,* pp. 191, 192; see, also, *Salot* v. *State Bar,* 3 Cal. 2d 615, 618 [45 P.2d 203].)

The motion for readmission is denied.