IN THE MATTER OF THE APPLICATION OF THOMAS F. MYLES FOR A LICENSE TO PRACTICE LAW.

No. 3484

May 7, 1947.                                    180 P.2d 99.

218

*Gordon W. Rice, Ernest S. Brown, Virgil H. Wedge, H. H. Atkinson, James T. Boyd, Robert W. Wells, Oscar Zapf,* and *D. W. Priest,* all of Reno, for Petitioner.

*Bert Goldwater,* Secretary, Board of Bar Examiners, and *Douglas A. Busey,* Chairman, Board of Bar Examiners, both of Reno, for Respondent.

## OPINION

By the Court, EATHER, C. J.:

Petitioner applies to this court for an order admitting him to practice law as an attorney and counsellor at law in all of the courts of this state, notwithstanding the refusal of the bar examiners to recommend him for admission.

In support of his charge against the committee, the petitioner alleges that he "formally prepared for the practice of law at Harvard University where he received two degrees, namely: (1) Bachelor of Arts; and (2) Bachelor of Laws; that he successfully passed the bar examination in the State of Massachusetts, and is now licensed and a member in good standing of the bar in that jurisdiction." He also states that he "served as an enlisted man and as an officer in the United States army on domestic and foreign duty for four years and two months during World War II." He also states that "he was a bona fide resident of Nevada for a period of more than six months next preceding the last bar examination, in September, 1946."

In his application the petitioner has set out in full the questions asked of him, the answers given, and the

grades assigned to each. Applicant and thirty-two others took the annual bar examination at Reno last September. The passing mark established by the board is a general average of 75 percent. The general average percentages attained by the thirty-two applicants, from the highest to the lowest, were as follows: 83.56, 81.28, 78.40, 77.90, 77.80, 77.35, 77.11, 76.78, 76.41, 75.88, 75.35, 74.97, 72.01, 71.50, 71.25, 69.24, 67.47, 67.40, 66.91, 66.44, 65.77, 65.50, 65.19, 64.28, 64.23, 63.64, 63.32, 59.07, 58.04, 56.71, 53.68, 48.85.

Mr. Myles' general average was 67.40.

The board of examiners consists of seven members of the state bar. Each member prepares the questions for a certain subject or group of subjects. The 1946 examination consisted of seven separate written examinations given over a period of four days. The subjects covered by those examinations were all included in the list set forth in rule I of this court. Each member of the board prepared one of the seven sets of questions. After the completion of the examination, each member personally read and checked the books containing answers to the questions propounded by him, and assigned grade marks to each book. The books were designated by numbers only until the grading was completed.

Applicant was given the following percentages: Constitutional law and evidence, 75; torts and conflicts of law, 61; jurisdiction of courts, 63.8; equity, administration and wills, 65; contracts, sales, agency, and bills and notes, 62; research, 75; real property, personal property, community property, and taxation, 70.

After setting forth, among other things, his residence in Nevada, his occupation and the extent and subjects of his studies in the law, applicant states, among other things, as follows: "That this court in the Hughey case, [infra], cited among others the case of Salot v. State Bar of California, 3 Cal.2d 615, 45 P.2d 203, as an authority in support of its conclusions, and in said case the California Court said in Paragraph 2: 'Unless he

(the petitioner) can show * * * that he has been treated unfairly and unjustly, this court will not listen to his complaint.' Applicant assumes this burden and he verily believes and therefore alleges that the specified grounds, reasons, and irregularities herein enumerated on his oath clearly establish that he has been treated unfairly and unjustly and that this honorable court should consider the same, and in the exercise of its 'sound and just judicial discretion' should license him to practice law in Nevada."

It is not stated in applicant's petition that the examination questions were unreasonably difficult, nor that the markings of the answers were too strict. In this counter affidavit, however, it is stated that some of the said examiners graded said examination papers more severely than others. Hence, the said examination subjects were not all graded on the same degree of difficulty or on the same standards of excellence. Applicant also states in his counter affidavit that, "It is admitted that in said application no charge has been made which includes all or any one of the exact words, 'fraud, imposition, or coercion.'" Nevertheless, he claims that allegations were made in his said application which are tantamount to such a charge, to-wit:

"(1) In paragraph VIII, page 4 through 60 inclusive, of said application, 28 separate unfair and unjust acts of conduct by said Board in giving and grading said examination are alleged and set forth.

"(2) In paragraph XIII on page 62 of said application, it is charged, as being improper and unjust, that some examiners graded said examination papers more severely than others. Hence the said examination subjects were not all graded on the same degree of difficulty or on the same standards of excellence.

"(3) In paragraph VIII on pages 26 and 41 respectively, of said application, it is charged, as being improper and unjust, that the individual answers, as set forth, of said applicant, to the questions of the Contracts, Sales, Agency, Bills and Notes Examination and

of the Real Property, Personal Property, Community Property, Taxation Examinations were not graded or otherwise marked on said respective examination papers. Hence it is impossible for said affiant to discover how said examiners arrived at the conclusion that said applicant failed to correctly answer any question or examination; and it is impossible to discover whether any of said answers were in fact graded individually or at all. Affiant therefore alleges that the said allegations in said application are equivalent to charges of fraudulent conduct on the part of said Board, for the word 'fraud' has a wide meaning, and among others, 'it includes all acts, omissions or concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.' "

A motion to dismiss the application has been filed by the board of bar examiners. Said motion is made upon the ground that the application of Thomas F. Myles does not state facts sufficient to support an order of the supreme court to issue him a license to practice law in the State of Nevada, for the reason that said application amounts to nothing more than a general statement that the answers of Thomas F. Myles to the questions asked at the 1946 Nevada state bar examination entitle him to a passing grade, and that he makes no charge of fraud, imposition, or coercion, and does not assert that he was denied a fair opportunity to take the examination. In support of the motion to dismiss the application of Thomas F. Myles for a license to practice law, the chairman of the board of bar examiners filed an affidavit, which among other things, reads:

"That on the 9th day of September, 1946, said applicant, Thomas F. Myles, together with thirty-two other applicants, was present for the examination at the Chamber of Commerce rooms in the State Building in Reno, Nevada. * * *

"That the examination was given by the Board of Bar

Examiners in conformity with the Rule of the Supreme Court and without any fraud, duress, or coercion; that the rules of the Board of Bar Examiners require an average grade of 75 for passing said examination; that no grades were adjusted, lowered or tampered with following said examination and all grades were made by number without regard to the name of the individual personality or relationship of the applicant; that said applicant Thomas F. Myles was examined upon the identical questions given to all applicants at the 1946 State Bar Examination; that said seven examinations were prepared by the members of the Board of Bar Examiners, each examiner having prepared one examination; that by reason of the fact that a number of the applicants taking said examination had been members of the armed forces and absent from the practice of the law and the study of law for some period of time, the Board of Bar Examiners graded said examination without undue strictness and with the tendency to give the applicant the benefit of any doubt regarding his answer to any particular question. * * * That but for the fair and generous grading of the examiners said applicants would not have received as high grades as were awarded to all of said applicants. * * * That the Board of Bar Examiners did not grade on a curve but judged each paper on its own merits; that this affiant is informed and believes and therefore alleges the fact to be that said examination was neither unjustly difficult nor was said examination graded severely for any of the applicants, including applicant Myles."

The recommendation of the board that applicant be denied a license to practice law was based entirely upon his failure to pass the written examination. In stating the grounds upon which his motion is based, applicant contends that he has been treated "unfairly and unjustly" and, while not charging fraud, imposition, or coercion directly, he contends, "nevertheless, allegations were made in said application which are tantamount to such a charge."

In view of the fact that applicant has made the above-named charges he expects this court to read and study every question and every one of his answers in all seven examinations, for the purpose of determining whether the board abused its discretion in not recommending him for admission to the bar. As was stated in Re Hughey, 62 Nev. 498, 499, 156 P.2d 733, 735: "Conceding that this court has the power and jurisdiction to examine the whole record of the proceedings of the Board of Bar Examiners, including the examination papers, it by no means follows that it is proper, or that it is the court's duty, to peruse such record and papers at the request of every unsuccessful applicant regardless of the insufficiency of his motion or petition in this court, and of his showing in support thereof."

We think the showing made is insufficient to justify our complying with applicant's request that we study all of the bar examination questions and his answers thereto.

"Burden is on applicant for license to practice law to show wherein the determination of the Board of Bar Examiners recommending denial of license was incorrect or unfair."

"The Board of Bar Examiners has a large discretion in the matter of recommending that applicant be admitted or denied admission to the Bar, and the exercise of this discretion will not be reviewed by the Supreme Court unless it clearly appears that an abuse has occurred." In re Hughey, supra.

"Where any dissatisfied applicant can show that he was denied passage of state bar examinations through fraud, imposition, or coercion, or that he was prevented from fair opportunity to take examinations, the Supreme Court will listen to his complaints, but inability to pass examinations which are successfully passed by other applicants will not be inquired into." Staley v. State Bar of California, 17 Cal.2d 119, 109 P.2d 667.

In the case of In re Investigation of Conduct of Examination for Admission to Practice Law, 1 Cal.2d

61, 33 P.2d 829, 833, the court stated as follows:

"We appreciate the difficulties and burdens cast upon boards of governors and examining committees by the State Bar Act. They are men of experience and standing in the legal profession, who devote their time and effort to the laborious work assumed by them without compensation beyond the reward that attends the realization of a service well performed. The examination made by the court into the conduct of the August, 1933, bar examination has not brought to light anything discrediting them or the assistants employed by them in the conduct of the examination. So much must be positively and unequivocably stated."

"While the powers of the committee of bar examiners are merely recommendatory and not binding upon this court, nevertheless, the committee of bar examiners was expressly created by statutory enactment for the definite purpose of relieving the court of the onerous duty of examining applicants for admission and investigating their fitness both as to legal learning and moral character to practice law in this state, and this court, recognizing this fact, will refuse to exercise its power in contravention to the adverse recommendation of the committee of bar examiners unless a convincing showing is made by the applicant to the court that such adverse recommendation is not based upon sound premises and valid reasoning." Spears v. State Bar of California, 211 Cal. 183, 294 P. 697, 700, 72 A.L.R. 923.

■ We are in accord with the statement of the law above cited, and without going further into the instant case, we may say that the conclusions reached in the opinions and cases cited are sound, and express our views on the points involved. We have found nothing that permits of any interference by the court with what appears to have been a duly authorized and conducted examination. The applicant having failed to pass the examination did not satisfy the bar examiners, by his answers to the questions asked, that he possessed sufficient knowledge to practice law.

It is very apparent that applicant in the instant case is relying on the dissenting opinion in the Staley case, supra. As was stated in Re Hughey, supra: "The opinion and *decision of the court* in that case do not support his position, but on the contrary strongly support that of the Board." (The italics are ours.)

The petitioner herein having failed to make a convincing showing in his application, as to the charges contained therein, for an order admitting him to practice law in this state, notwithstanding the refusal of the committee of bar examiners to recommend him for admission, the motion to dismiss the application is hereby granted.