IN THE MATTER OF THE APPLICATION OF CARL M. LOER FOR ADMISSION TO THE BAR OF THE STATE OF NEVADA.

No. 3623

January 4, 1951.                                    226 P.2d 272.

*Emile J. Gezelin,* Reno, and *Carl M. Loer,* for Petitioner.

*Bert Goldwater,* secretary, state board of bar examiners, and *Douglas A. Busey,* chairman, state board of bar examiners, Reno, for Respondent.

## OPINION

By the Court, EATHER, J.:

This matter is before us on a petition for review of the recommendation of the board of bar examiners, state bar of Nevada, that Carl M. Loer be denied admission to the state bar of Nevada and upon the respondent board's motion to dismiss, motion to strike, and answer to the petition, together with petitioner's reply thereto.

Petitioner wrote the bar examination given by the board on March 13, 14, and 15, 1950. His average grade for six examinations was 71.83. He was eighth in rank in a class of 13, of whom six passed with a grade of 75 percent or better. In due course the board certified petitioner's grades to this court, together with copies of the questions asked by the board and the written

answers given by petitioner. Respondent board, pursuant to section 6 of rule 1 of the Rules of the Supreme Court, recommended that petitioner be denied admission to the practice of law in this jurisdiction. After notice of the board's recommendation, petitioner duly filed his verified petition for review to the board's adverse recommendation.

Immediately prior to oral argument, the parties, by written stipulation, limited the issues to be considered by the court. We first shall consider the motion to dismiss.

Petitioner alleges that he was imposed upon because he was asked three questions on the subject of partnerships, a subject not specifically listed in rule 1, section 3, which rule lists the subjects upon which an applicant may be examined. Respondent, however, asserts that it may, under section 3 of rule 1 of this court, examine applicants on any subject of the law so long as it does not substantially change or add to the list of subjects set forth in the rule. A portion of rule 1, section 3, immediately following the listed subjects, reads as follows: "* * * and such other subjects as the board of bar examiners may determine. The board of bar examiners is not obligated to adhere to any of the above optional subjects; but no substantial change in, or addition to, any of the subjects of examination shall be made until such notice thereof as shall be prescribed by the supreme court be first given."

Obviously the intent of the rule is that the board of bar examiners may examine on subjects other than those listed. It so states. The only limitation is that a non-listed subject must not be a substantial change from the list. Clearly partnerships is not such a change. The law of partnerships is a branch of the law of principal and agent, a partner embracing both characters being at the same time the principal and the agent of his copartner. 40 Am.Jur. 132, par. 9. However, it

does not seem necessary for us to determine that question. The examination complained of by petitioner contained seven questions of which six were required to be answered. Petitioner elected to answer all of the questions touching on the law of partnership. He will not now be heard to complain of a situation which in part at least he could have avoided.

He further asserts that being notified upon the morning of the first day of the examination that questions upon the law of partnerships were to be given, he devoted most of the night before the examination embracing partnership law in studying that subject with the result that he was deprived of the sleep to which he was entitled and suffered great nervous strain and mental anguish. From that he asks us to conclude that his efforts in subsequent examinations suffered to the extent that he did not attain a passing average. This court will not speculate that his failure to pass subsequent examinations was the result of his loss of sleep and nervousness, assuming that to be the fact. (In passing it may be noted that petitioner received grades of 69 in each of the examinations given before he felt obliged to spend the night of March 13–14 in study, while he received grades averaging 73.25 on examinations written thereafter, and that on the three questions concerning partnership law he received an average grade of 80.)

Petitioner next asserts that he was imposed upon because the titles of three of the examinations were misleading. He contends that the subject "Constitutional Law" should be limited exclusively to the questions upon the federal constitution. We cannot accept such a restricted construction of that title nor is there any such limitation in rule 1, section 3. He contends that in the examination on contracts a question calling for a consideration of the parol evidence rule is

improper. Professor Williston in his work on Contracts, referring to the parol evidence rule, says: "That rule, in spite of its name, is not only a rule of evidence, as has been abundantly shown by Thayer and Wigmore, but is not a rule of interpretation or of construction. It is a rule of substantive law which, when applicable, defines the limits of a contract."

In the Restatement of the Law, the parol evidence rule is treated under the subject of contracts.

Lastly, petitioner asserts that question 1 of the examination entitled, "Sales, Equity and Jurisdiction of Courts" calls for a discussion of a rule of law in the field of torts. We have read the question, and, although the facts recite an act of violence on the person of one of the parties, it may be answered entirely within the framework of the law of sales. Viewing the allegations of this part of the petition most favorably to petitioner, we find no merit therein.

It is next urged by petitioner that he was imposed upon because some questions required a memorized knowledge of our statutes. With regard to a question in the subject of criminal law concerning the crime of arson, he asserts and concludes the examiner sought an answer based upon a statute. There is nothing in the question to show that to be a fact. Petitioner characterizes question No. 1 of the examination on "Practice and Procedure, Construction and Interpretation of Statutes" as "absurd and senseless" unless considered in the light of section 8703, N.C.L.1929, and asserts that he nevertheless "wrote a perfect answer on the basis of the common law." This assertion is somewhat astonishing since the remedy of attachment, as such, was unknown to the common law. Bancroft's Code Practice and Remedies, volume 3, page 3026, section 2259, reads: "The remedy of attachment as now recognized in the western states was unknown to the common law. It is purely of statutory origin, and depends for its effectiveness entirely upon a compliance with legislative requirements. * * *"

This court ruled similarly in Green v. Hooper, 41 Nev. 12, 167 P. 23. Petitioner also wholly misconstrues rule 1 of the court in asserting that the prohibition against asking questions calling for a memorized knowledge of statutes applies to the subjects of criminal law and practice and procedure. The rule specifically limits that prohibition to one subject, "Construction and interpretation of state and federal statutes."

Paragraph X of the petition alleges imposition because four of the examiners used $16\frac{2}{3}$ possible points for each of the six questions, as the numerical equivalent of a perfect answer to individual questions instead of 100 percent. The rule of court requires that an applicant to be recommended for admission must have a grade of 75 percent for the entire examination. Beyond this requirement the rule does not go. It does not require that each individual question be graded upon the basis of 100 percent as petitioner claims. There certainly is no imposition upon the petitioner because some of his examinations were graded upon the basis of $16\frac{2}{3}$ points for each of the six individual questions answered. Actually the numerical marks are only arbitrary figures to be assigned according to the demonstration of qualities considered necessary for a lawyer. The figures reflect the examiner's appraisal in terms of passing or failing and the individual examiner's mathematical application is a matter of method. It does not increase or decrease the grades whether one method or the other is used. The final grade on the whole paper is simply a translation into numbers of the quality of the response to the questions.

Petitioner also alleges that there was "tampering" with the grades given by the board members in charge of the examination on "Sales, Equity & Jurisdiction of Courts." If there was such a tampering it appears from the penciled marginal notations that petitioner profited by it since his grade on the first grading of the examination was 68 percent and on the second grading

of the examination it was 70 percent. Clearly the examiner may reconsider the grades initially assigned by him and may change them. This is not "tampering." It is, if anything, evidence of earnest and conscientious zeal on the part of the examiner. The whole board may reconsider any or all of the grades given by the individual members thereof. In any event, by whatever method petitioner's grades were revised, his complaint in this regard is unavailing. Analyzing the written grades on petitioner's examination book it is a mathematical improbability that petitioner could have had enough points taken from him by "tampering" in this examination so as to prevent him from passing the entire bar examination. All of petitioner's assertions that he was graded too strictly are entirely without merit. In the case of In re Myles, 64 Nev. 217, 180 P.2d 99, 102, we approved and quoted from Staley v. State Bar of California, 17 Cal.2d 119, 109 P.2d 667, as follows: "Where any dissatisfied applicant can show that he was denied passage of state bar examinations through fraud, imposition, or coercion, or that he was prevented from fair opportunity to take examinations, the Supreme Court will listen to his complaints, but inability to pass examinations which are successfully passed by other applicants will not be inquired into."

The petition before us for the most part amounts to an assertion that the examination taken by petitioner was not properly designed to determine his academic fitness to become a member of the bar of this court. The relief sought is an order of this court admitting petitioner to such membership. On June 30, 1950, we entered an order permitting petitioner, as one of seven similarly situated, to take the bar examination to be given the following September. Five took advantage of the order and, of them, two passed. Petitioner declined to avail himself of that opportunity for the reason, among others, that "Your board would not give me a passing grade even if I got an absolute 100 in every

question." It follows, therefore, that we are being asked either to regrade his answers, which we will not do, In re Myles, supra, or to admit him to practice law in this jurisdiction on the speculative assumption that if the examination had been different he would have received a grade of 75 percent or higher. The latter course would be plainly improper.

Before leaving this matter, we take notice of the fact that the petition and reply as filed were drawn by petitioner personally. His counsel in this proceeding appears to have been engaged after issue was originally joined. There are 18 paragraphs in the original petition. Of those, only six bear on the issues finally submitted to the court. By stipulation of counsel all others were stricken. Much of the language employed in the petition may fairly be characterized as inflammatory and scandalous. It was directed at the members of a board appointed by this court. No member escaped petitioner's scathing denunciations. The examiners and their questions are characterized by such terms as "deliberate fraud," "Clear fraud," "blunder," "haphazard and inconsiderate," "flagrant and outrageous," "abysmal ignorance," "ridiculous," "senselessness," "absurd," "utterly insupportable," "shocking fraud," etc. The men constituting that board are respected members of their profession in the communities in which they live and practice. Petitioner is not a member of the bar and for that reason alone we have taken no steps to purge our files of his pleadings herein. Let it clearly be understood, however, that no member of the bar of this court would have been permitted to indulge in such shameful name calling. In fact, at the hearing, petitioner abandoned all charges he theretofore made against the individual members of the board of fraud, coercion and ignorance. If petitioner did not believe he had sufficient evidence to support such grave charges he should never have made them at the outset. The practice of loosely alleging matters or incorporating

them into the prayer of a petition, which charges bring persons into public disrepute and degradation, cannot be condemned too severely.  As already stated, this court will not be host to scurrilous and irresponsible pleadings which are filed, made public, and then voluntarily abandoned before hearing or which are not and cannot be substantiated by records and proof.

Despite the foregoing observations, we are not without sympathy for petitioner's position.  He is apparently barred by the rule that became effective January 1, 1951, by reason of his lack of educational qualifications, from taking the examination again.  He has undoubtedly in the past made diligent effort and spent time and money in his study of law in his desire to be able to pass the examinations.  He attained an average grade which, while insufficient to pass, entitled him to much credit. He did obtain a passing grade in two of the six examinations.  Letters of recommendation mailed to members of this court show that he is held in high esteem by many good citizens of this state.  But "one's general qualifications are not to be substituted for the requisite knowledge of law which one must possess in order to be admitted into the legal profession."  See In re Investigation of Conduct of Examination for Admission to Practice Law, 1 Cal.2d 61, 33 P.2d 829, 830.

Having decided to grant the motion to dismiss, we need not address ourselves to the issues raised by the motion to strike and the denials of the respondent board.

Petition dismissed.

BADT, C. J., concurs.

NOTE:   MERRILL, J., having become a member of the court after the argument and submission of the case, did not participate in the foregoing opinion.