IN THE MATTER OF THE PETITION OF DALLAS WENDELL REID FOR REVIEW OF BAR EXAMINATION, 1958.

No. 4174

February 23, 1960      349 P.2d 446

(See also 75 Nev. 84, 335 P.2d 76.)
Petitioner in Pro. Per.

*Richard W. Blakey*, Chairman, Board of Bar Examiners, of Reno, for State Bar of Nevada.

## OPINION

By the Court, BADT, J.:

The above-captioned matter is before us on a petition for review of the recommendation of the Board of Bar Examiners that Dallas Wendell Reid be denied admission to the State Bar of Nevada.

Mr. Reid was 27th in rank in a class of 29 that took the 1958 Nevada State Bar examinations. Twenty-two of the 29 passed the examination. The passing grade was

established many years ago as 75 percent and was in effect at the time. Mr. Reid's average grade on all of the examinations taken was 70.4 percent. This resulted from the following respective grades on all examinations: examination No. 1, 70 percent, examination No. 2, 73 percent, examination No. 3, 74.2 percent, examination No. 4, 64.8 percent, examination No. 5, 72.6 percent, and examination No. 6, 68 percent. It thus appears that petitioner did not receive a passing grade in any of the subjects covered by the six separate written examinations.

In his amended petition for review and in his oral presentation thereof in his own behalf petitioner alleged that he was prevented from passing the examination through fraud, imposition, and coercion, and was deprived of a fair opportunity to take the examination. Specifically, reliance was placed upon the following contentions:

(1) "Petitioner was required to answer questions in an academic examination identical with the questions propounded to law students recently graduated from the academic study of the law, which examination was not a fair test, standing alone, of petitioner's learning, training, and ability as reflected by his background of more than twenty years in the active general practice of the law."

Many years ago our rules did indeed provide for a different and limited examination of attorneys from other jurisdictions who sought admission to practice in this state. California and possibly other jurisdictions still so provide. However, it now is and has been for a great many years the rule and practice in this state that attorneys from other jurisdictions seeking admission here must take the same academic examinations as all other applicants.

(2) Attorneys from other jurisdictions seeking admission here are required to submit additional data: a certificate of the clerk of the court in the state in which

the applicant last practiced certifying to his good standing in that state, the non-pendency of any disbarment proceedings, a letter from the secretary of the local bar association of the applicant's last place of residence certifying to his good moral character, a letter of recommendation from the judge of the court of record before which he last practiced, and other evidence of good moral character and fitness. Petitioner asserts that he not only submitted this required information but that the same showed definitely his successful practice in several jurisdictions for over 21 years. He asserts that he was fraudulently deprived of the benefit of this evidence by the refusal of the Board of Bar Examiners to give it any consideration. In reviewing the application of William L. Hughey for a license to practice law, 62 Nev. 498, 156 P.2d 733, this court noted that the petitioner questioned the rules of procedure which will not allow the board to weigh, with the academic examination, the personalities and backgrounds of the applicants. This it rejected as any ground for reversing the recommendation of the board, saying: "With respect to applicant's contention that the personality and background of an applicant should be weighed along with the written examination, it is sufficient to say that the general qualifications of an applicant will not be substituted for the requisite knowledge of law which one must possess in order to be admitted into the legal profession." Accord: In Re Loer, 68 Nev. 1, 226 P.2d 272. There, as here, the board's recommendation that the applicant be denied a license was based entirely upon his failure to pass the written examination. Recourse to the information supplied by the National Conference of Bar Examiners as to the applicant's ability and integrity would therefore, under the rules, have added nothing to the situation.

(3) During the oral presentation petitioner submitted to the court a transcript of all of his answers to all of the questions in the six separate written examinations and asserted that even a casual examination of his

answers to questions selected at random would convince the court that he was entitled to passing grades. Petitioner's request would require the court to examine all of his answers to all of the questions in the six examinations. This, under the circumstances presented, we will not undertake. In Re Hughey, supra.

(4) Petitioner contends that because, in each examination, his paper was given a percentage grade as a whole without giving a percentage grade to each of his questions, he was in effect deprived of an opportunity to review the gradings, and therefore "coerced into accepting the abstract statement made by the Board of Bar Examiners that he failed to pass the written examination." He argues in effect that the method used is contrary to all accepted methods of grading and was grossly improper and prejudicial. It was the method adopted by the Board of Bar Examiners for all 29 examinees at the 1958 examination and included the seven who failed. It is the method followed in prior examinations for many years. The point raised however is not entirely without merit. But while it does present to the unsuccessful applicant a measure of difficulty in determining just which of his answers in a given examination brought his average grade on that examination to a low level, the mere fact that the examiner used separate notes for the grading of the individual questions, from which he gave a grade to the paper as a whole, does not in itself cast any reflection on the fairness or the accuracy of the grade allotted. This precise objection was heretofore rejected by this court. In Re Myles, 64 Nev. 217, 180 P.2d 99.

(5) Petitioner asserts that the Board of Bar Examiners was biased and prejudiced against him because the law partner of a member of the Board of Bar Examiners had accused petitioner of practicing law in the State of Nevada without a license so to practice. No proof was offered in support of this assertion.

(6) Petitioner asserts further however that an attorney practicing in Clark County had written a letter likewise accusing petitioner of practicing law in Nevada

without a license; that such letter had come to the attention of the Board of Bar Examiners and had influenced one or more of them in the recommendation of the board to this court that petitioner be denied a license to practice in this state. Such original letter was introduced in evidence and did indeed make the accusation asserted. However, it was not shown that any member of the Board of Bar Examiners had knowledge of such letter at the time he graded applicant's papers. On the contrary, it was shown that at the time of such grading the applicants were unknown to the examiners other than by number. When taking the examination each applicant drew a number. These numbers, with the applicants' names, were handed the secretary of the board and placed by him in a sealed envelope in his safe. The secretary is not a member of the examining board. The names of the applicants, identified by number, were not made known to the members of the board until after the completion of the grading. It therefore appeared affirmatively that even if they had known of the letter in question (of which fact the record is devoid of any proof), it could not have affected the grades assigned.

(7) Petitioner next refers to what formerly was designated as paragraph 5 of Rule I (now Rule 50 S.C.R.) of the Rules of the Supreme Court, requiring the state Board of Bar Examiners to conduct written and oral examinations of the applicant, the questions and answers to be reduced to writing. He contends that because the Board of Bar Examiners gave no oral examination, its recommendation that petitioner be not admitted leaves the grading of his written examinations without force or effect in view of this direct violation of the rule. His position apparently is that had he been permitted to take an oral examination, the same would have at once demonstrated to the examiners his complete ability to pass an examination in any subject concerning which he might be questioned. The assignment is without merit. As he had failed to achieve a passing grade in any one of the six written examinations, an oral examination could not have profited him.

In dismissing the application for review and for admission to practice notwithstanding the adverse recommendation of the Board of Bar Examiners in In Re Myles, supra, this court noted: "The recommendation of the board that applicant be denied a license to practice law was based entirely upon his failure to pass the written examination." [64 Nev. 217, 180 P.2d 101.] Likewise in In Re Hughey, supra, this court used precisely the same language.[1] It would thus appear that the written examinations determining the academic qualifications of the applicants as the basis for the Board's recommendation to the court have had the sanction of this court for many years.

[1]Our original statute governing admission of attorneys had no educational qualifications (Stats. 1861, p. 6), but required applicants to produce satisfactory testimonials of good moral character and to undergo a strict examination in open court as to his qualifications "by one of the judges of the Supreme Court of this territory." Section 5 of the original act also permitted admission by "the district court of this territory" under a like showing. Several sections of this statute were amended in 1871, requiring an applicant to undergo only such examination "as the Supreme Court may direct," and providing that in its discretion such examination and testimonials might be dispensed with. Cutting's Compiled Laws of Nevada, 1900, sec. 2614. In 1875 (Stats. 1875, p. 142) the Supreme Court on application of a district judge was required to appoint a committee to examine applicants under rules and regulations to be prescribed by the Supreme Court and to report their recommendations to the Supreme Court. Under Compiled Laws, sec. 2618, an attorney admitted in a sister state could be admitted in Nevada upon his affidavit of such admission or upon submission of his license showing such admission. This was carried forward into the Revised Laws of 1912 as sec. 504, with a slight amendment as to admission of foreign attorneys. Since the enactment of the State Bar Act in 1928, now NRS 7.270 et seq., authorizing the Board of Governors, with the approval of the Supreme Court, to appoint a committee of bar examiners, NRS 7.490, and the promulgation of former Rule I of the Rules of the Supreme Court (particularly Rule 50 S.C.R.), it is doubtful that any oral examinations have been given save by Albert D. Ayres, Esq., when acting as chairman of the Board of Bar Examiners (1934-1941), but those oral examinations were restricted for the most part to the history of the United States and the history of the State of Nevada. There are not in the files of the present Board of Bar Examiners or of the present Board of Governors or of the clerk of this court (since the files of examinations have been kept by him since March 1951) any record of the transcript of questions and answers of any oral examination. It may be accepted as a fact that for a great many years any resort to an oral examination has been abandoned.

(8) Petitioner took the deposition of one of the members of the Board of Bar Examiners and that deposition was introduced in evidence. The applicant examined such member at considerable length as to how he formulated his questions in the examination subject assigned to him. Petitioner severely criticized the method thus developed, but, without discussing the question, we may simply express our conviction that the method was in all respects proper.

Petitioner's oral argument developed sundry other complaints attacking the integrity, motives, and good faith of the members of the Board of Bar Examiners and the members of the State Bar of the State of Nevada in general, without any supporting evidence. With this we do not find it necessary to deal.

The petition is dismissed.

MCNAMEE, C. J., and PIKE, J., concur.