Application of Arthur H. PETERSON for Admission to the Alaska Bar Association.

No. 1066.

Supreme Court of Alaska.

Sept. 17, 1969.

———◆———

Arthur H. Peterson, in pro. per.

Stanley Howitt, Executive Secretary Alaska Bar Association, Anchorage, for Board of Governors, ABA.

OPINION

Before NESBETT, C. J., DIMOND, RABINOWITZ and BONEY, JJ., and LEWIS, Superior Court Judge.

RABINOWITZ, Justice.

Arthur H. Peterson asks us to admit him to the practice of law in Alaska on the basis that he has met the requirements of both AS 08.08.130 and Rule II, Alaska Bar Rules, which embody prerequisites for ad-

mission. Additionally, appellant argues that he was denied due process of law through the manner in which his examination papers were graded by the Committee of Law Examiners. Appellant asserts that a further denial of procedural due process occurred by virtue of the Board of Governors of the Alaska Bar Association's refusal to grant a hearing upon his attempts to appeal from the Committee of Law Examiners' evaluation of his two separate examination papers.

Both AS 08.08.130 and Rule II of the Alaska Bar Rules require, as one of the preconditions to admission to the Alaska Bar, that an attorney applicant take and pass a bar examination given by the Alaska Bar Association.[1] Under section 6 of Rule II of the Alaska Bar Rules, "Examination shall be conducted by or under the direction of the Board." In this same section, it is further provided that:

> For the purpose of conducting examinations, the Board shall appoint a committee of three or more active members of the Alaska Bar, and this committee shall be known as the Committee of Law Examiners. * * * *The Committee of Law Examiners shall have charge of the conduct of the examination* and shall, as soon as practicable after the completion thereof, certify to the Board the names of the persons who have been successful and the names of those who have been unsuccessful in the taking of such examinations and the grades assigned to each.[2] (Emphasis added.)

Appellant wrote and failed the January 1967 and September 1967 bar examinations which were conducted under the direction of the Board of Governors of the Alaska Bar Association and graded by the Committee of Law Examiners. Despite the Committee of Law Examiners' certification that appellant failed to achieve a passing grade at either examination, appellant contends that he is "well qualified" for admission to the practice of law in Alaska and that his "Alaska bar examination papers, which remain in the possession of the Alaska Bar Association, are adequate evidence of his legal qualification." Essentially, on the basis of these assertions, appellant requests us to "affirm the merits" of his examination papers and order his admission to the Alaska Bar Association. We conclude that this relief should not be granted to appellant.

In Application of Brewer,[3] we said in part:

> Bar examinations are commonly used throughout the states as a test of one's fitness to advise and represent clients in legal matters. When one fails to pass an appropriate and properly administered examination, it is not unreasonable to say that he has demonstrated his lack of proficiency in law so as to justify denying him the right to be admitted to the bar. We believe that the legislature-imposed disqualification for one who took and failed to pass the bar examination * * * did have a rational con-

---

1. In this respect AS 08.08.130(5) provides that:
   A person is eligible for admission to the Alaska Bar if he
   * * * * *
   has passed a bar examination given by the Alaska Bar.
   Subsection (g), § 2 of the Alaska Bar R. II requires that "the applicant must have passed an examination as prescribed in section 6 of this rule."

2. Alaska Bar R. II, § 7 states:
   The Board of Governors, upon receipt of the names certified by the Committee of Law Examiners, shall certify

the successful applicants to the Supreme Court.
   Section 8 of the same rule reads as follows:
   Any applicant who has failed to pass an examination shall be promptly notified by the secretary. Any applicant who has taken the examination three times and failed shall not be permitted to take another examination except by special permission of the Board of Governors.

3. 430 P.2d 150, 152 (Alaska 1967).

nection with one's fitness to be admitted to the Alaska Bar * * *.[4]

In effect, appellant seeks to circumvent the requirement of successful passage of a bar examination, called for by Rule II of the Alaska Bar Rules, AS 08.08.130, and the rationale of such examinations as expressed in Application of Brewer[5] and Application of Steelman.[6] Appellant attempts to achieve this end by arguing that deviation from this criterion is justified in view of the fact that he is a graduate of the University of Chicago and of Wayne State University Law School; that he was admitted to practice law in the State of Michigan on June 21, 1963, and in the State of Illinois on October 24, 1963, after passing bar examinations in each of these states;[7] that since coming to the State of Alaska he has been employed by the Legislative Affairs Agency serving as legislative counsel from August 10, 1966, to December 15, 1967, and as revisor of statutes for the State of Alaska from December 15, 1967, to the present time; that the excellence of his work as legislative counsel and

4. In Application of Brewer, 430 P.2d 150, 152 (Alaska 1967), we went on to hold that:
   > Because such a rational connection did exist and the legislative requirement was not arbitrary, and because applicant did take and fail to pass the bar examination after June 30, 1965, there has not been a denial of due process of law in refusing applicant admission to the Alaska Bar. (citing Schware v. Board of Bar Examiners, 353 U.S. 232, 238–239, 77 S.Ct. 752, 1 L.Ed.2d 796, 801–802 (1957); Konigsberg v. State Bar of California, 353 U.S. 252, 262, 77 S.Ct. 722, 1 L.Ed.2d 810, 819 (1957); Application of Houston, 378 P.2d 644, 646 (Alaska 1963)).

5. 430 P.2d 150, 152 (Alaska 1967).

6. 448 P.2d 817 (Alaska 1969).
   In *Steelman*, we alluded to the statement of J. Brenner, Bar Examinations and Requirements for Admission to the Bar 16 (1952) quoted in National Conference of Bar Examiners, The Bar Examiners' Handbook 126 (1968), where in regard to the purpose of bar examinations, it was said:
   > Bar examinations should test not information, and memory, not experience, but the applicant's ability to reason logically and to make an accurate legal analysis of the problems included in the examination, and then to make a sound application of the basic principles of the law to the facts. This type of examination will provide a good evaluation of the applicant's legal training, the kind that students receive in the better law schools.
   We also referred to E. Marshall Thomas, a chairman of the National Conference of Bar Examiners, and his articulation of the reasons for the requirement of passage of a bar examination. In Mr. Thomas' view:
   > It is apparent that the law schools teach the same skills as bar examiners test. It is also common knowledge that the law schools test these same abilities in each year of law study. This being true, why should bar examiners repeat the work of the law school faculties? Why not admit to the bar every law student who is awarded a law degree by a law school approved by the American Bar Association? The answer is that the bar examination serves an additional purpose. The fact that a law student knows he must face bar examinations after graduation and before admission to the practice is a healthy educational stimulant to the student. It is also a stimulant to the law school faculty to maintain high standards of legal education because the faculty knows that their students will be examined by practicing lawyers who are the bar examiners of the respective states. The bar examination also serves an additional function in that the bar examination has one essential difference from law school examinations. It is a comprehensive examination covering the entire field of several years of law study, whereas law school examinations are pinpointed to particular subjects. It is in the bar examination that the student, for the first time, must identify for himself the subject of law which is involved in a question. (citing E. Thomas, The Bar Examination, Its Function, 32 The Bar Examiner 69, 70 (1963), quoted in National Conference of Bar Examiners, The Bar Examiners' Handbook 127 (1968)).

7. Appellant also alleges, and the record supports his allegations, that he is presently a member in good standing of the bars of both states and that Wayne State University Law School is approved by the American Bar Association.

revisor of statutes for the State of Alaska, and his legal and mental abilities, are attested to by "several responsible Alaskans, including attorneys and public officials—individuals concerned with the high caliber of the legal profession in this state"; and that his Alaska Bar examination papers "are adequate evidence" of his legal qualifications. From the foregoing, appellant draws the conclusion that he was "denied substantive due process of law when he was refused admission even though he is qualified and his admission would not endanger the public."

■ We remain unpersuaded as to the efficacy of abandoning the clear and unambiguous legislative and judicial standard which requires passage of a bar examination given by the Alaska Bar. Adoption of appellant's position would in our view abolish any semblance of objective criteria and would substitute in its place rather vague and shifting standards which dramatically increase the probabilities of ad hoc admissions. If appellant's suggested standards were accorded primacy, we thereafter could not say with any degree of assurance that a particular applicant possessed the requisite qualifications to advise and represent clients in legal matters.[7a] In short, we choose to adhere to the rationale of Application of Brewer[8] and reiterate our belief that "When one fails to pass an appropriate and properly administered bar examination, it is not unreasonable to say that he has demonstrated his lack of proficiency in law so as to justify denying him the right to be admitted to the bar."[9] We therefore hold that appellant, having failed two successive bar examinations which were given under the direction of the Board of Governors of the Alaska Bar Association, has not as yet demonstrated that he possesses the necessary qualifications for admission to the practice of law in this state.[10]

**7a.** It is possible to construe appellant's argument, based on his prior bar admissions, educational, and professional background, as a basis for questioning the Board's decision and advancing a rationale for this court's exercising review of *appellant's examination papers* rather than viewing the argument as advancing a basis for his admission to the practice of law in Alaska. A reading of our decision in the case at bar will disclose that this court will not undertake to review the merits of an appeal until the unsuccessful applicant has been accorded a meaningful appellate hearing before the Board of Governors.

**8.** 430 P.2d 150, 152 (Alaska 1967).

**9.** In Application of Steelman, 448 P.2d 817, 821 (Alaska 1969), Justice Rabinowitz said in his concurring opinion that:
> The mere fact that a lawyer is licensed to engage in the general practice of law in one state does not give him a vested right to freely exercise such license in this state or any other state. In re Avery's Petition, 44 Haw. 597, 358 P.2d 709 (1961); State ex rel. Boynton v. Perkins, 138 Kan. 899, 28 P.2d 765 (1934); Baker v. Varser, 240 N.C. 260, 82 S.E.2d 90 (1954).

**10.** In re Reid's Petition, 76 Nev. 76, 349 P.2d 446, 447 (1960), involved a situation where the petitioner, who failed the particular bar examination, had practiced law in several jurisdictions for over 21 years. There the court said:
> With respect to applicant's contention that the personality and background of an applicant should be weighed along with the written examination, it is sufficient to say that the general qualifications of the applicant will not be substituted for the requisite knowledge of law which one must possess in order to be admitted to the legal profession. (Citing In re Hughey, 62 Nev. 498, 156 P.2d 733 (1945)).

In re Avery's Petition, 44 Haw. 597, 358 P.2d 709, 710–711 (1961), petitioner had practiced law for 50 years in Massachusetts and was also admitted to the bars of the Supreme Court of the United States, and other federal courts, before he failed the bar examination of Hawaii. There the court said:
> We are satisfied that the bar examination requirements in this jurisdiction are not unreasonable, arbitrary or oppressive. They constitute a valid exercise of the State's police power and prerogative in pursuance of its objective of maintaining the legal profession on a high level.
>
> We affirm our ruling in connection with petitioner's first application that the right to practice law is not a natural or constitutional right, but a priv-

Our holding is not dispositive of all facets of appellant's appeal. Appellant has also advanced arguments which point to denials of procedural due process both in the manner in which his two separate examinations were graded and from the fact that he was denied a hearing before the Board of Governors after he had appealed from the law examiner's grading of his January 1967 and September 1967 examination papers. In our view, these points of contention overlap and are so intimately related that they will be treated as presenting but a single issue.

At the pertinent times in question, article XIII, section 14(a) of the by-laws of the Board of Governors of the Alaska Bar Association provided as follows:

> If an applicant for admission, by examination or otherwise, is rejected by the Board for any reason, the applicant has thirty (30) days in which to apply to the Board for a hearing. If no request is made within the thirty (30) days allowed the decision of the Board shall be final.[11]

Subsequent to receiving notification of his failure to pass the January 1967 bar examination, appellant, by letter dated February 22, 1967, notified the chairman of admissions that he appealed the rejection of his application for admission to the bar. Appellant's communication of February 22, 1967, initiated a remarkable correspondence with the chairman of admissions of the Alaska Bar Association. Their exchange spanned over a year's time and reflected a high degree of candor on the part of the chairman of admissions. In his early letters, appellant inquired as to the nature of the appellate procedures before the Board of Governors. In response to these inquiries, the chairman replied, in part, that since section 14(a) of article XIII of the by-laws of the Board of Governors was of recent origin, experience was lacking in formulating answers to appellant's questions. The chairman also stated at this time that "Since the question of procedure is open, I invite your suggestions." After receiving appellant's response,[12] the chairman suggested that an appropriate procedure would be:

> A failing candidate may nominate a consenting member of the Alaska Bar Association to review his examination on the applicant's behalf. Upon notice from the member, the Admissions Chairman will forward to the member a copy of the applicant's examination, the examination question, the "model" answer used as an advisory aid by the grading com-

---

ilege or franchise the exercise of which is conditioned upon the prescribed requirements of each jurisdiction.

    \*     \*     \*     \*     \*

Having no constitutional right to practice law in the State of Hawaii under a Massachusetts license, petitioner cannot be heard to complain that he has been denied due process or faith and credit. Practice experience \* \* \* must coincide with the requisite knowledge of the law as fairly tested and determined through a bar examination.

See also Staley v. State Bar of California, 17 Cal.2d 119, 109 P.2d 667 (1941); In re Chachas Petition, 78 Nev. 102, 369 P.2d 455 (1962).

11. See by-laws of the Alaska Bar Association, adopted by the Board of Governors of the Alaska Bar Association on March 4, 1964, and amended on September 25, 1965, and February 25, 1966. 4 Alaska L.J. 46 (March 1966).

12. Appellant in response referred the chairman to rule 7 of the rules and regulations of Michigan Board of Law Examiners which provided:

> Within 30 days after the receipt of the final results of a bar examination, applicants who have failed may apply for review by the Board of any of their answers, filing five legible copies with the assistant secretary. Such application shall set forth for each answer appealed: (1) the applicant's answer, copied exactly from his blue book, and (2) a brief justifying the applicant's answer as entitled to a passing grade.

Appellant also suggested that if the Michigan system is too impractical in Alaska "the Board should at least review each unsatisfactory answer which is appealed and state its deficiency to the examinee. Answers that are clearly adequate need not be reviewed."

mittee, and a bill for the cost of Xerox reproduction. The member will review the examination himself. He may make notes, etc., but he may not give the examinee any part of the exam or the examination materials for the applicant's personal perusal. The purpose of the review is two-fold:

1. To determine the weaknesses of the examinee so that the member may direct the applicant's study to their elimination in any future examination.

2. To determine whether a hearing before the Board of Governors is warranted on the grounds of arbitrariness or error on the part of the examination committee.

After initially indicating his intended acquiescence to the chairman's suggested procedures, appellant changed his mind and wrote, "Contrary to my original intention, as stated in my July 27th letter * * * I do not now plan to have a bar association member review my January examination paper * * * before the September exam." [13] Apparently no hearing was held prior to the September 1967 examination. Appellant then took the September examination and after receiving notification that he was again unsuccessful appealed to the Board of Governors of the Alaska Bar Association.[14] Shortly after filing this second appeal, appellant advised the chairman that:

It will be necessary for me to have the examination questions, my graded examination papers and the model answers in order to prepare my brief for the board. Therefore I renew my request for a copy of these items.

On December 9, 1967, the president of the Alaska Bar Association informed appellant that it was the

decision of the board that it will not release any of the printed questions, the model answers, or the answers which you have written to the examination.[15]

On March 2, 1968, appellant met with the Board of Governors of the Alaska Bar Association.[16] Thereafter, on April 15, 1968, the executive secretary of the bar association advised appellant that:

It is the long standing policy based on various reasons not to make available to the applicant either the questions, model answers or the applicant's answers on bar examinations. However, in re-

13. In this letter of August 16, 1967, appellant voiced two further objections to the procedure which had been suggested by the chairman. These additional objections were:

[T]he difficulty in finding a bar member willing to serve in the reviewing capacity and the time at which the suggestion comes—slightly over a month before the next exam and more than five months after this appeal was filed. Both of these factors prevent this from being an effective step in the procedure for an administrative appeal.

14. Appellant's letter of November 18, 1967, was in response to the new chairman of admissions' letter of November 13, 1967, in which it was stated in part:

The comments of John Havelock, former admissions chairman, in his letter of July 24, 1967, concerning procedures are reaffirmed and will be the policy followed by the admissions chairman until further direction is given by the Board of Governors.

15. In this same letter appellant was further advised that it was the decision of the board that

(1) The executive secretary will verify the correctness of your examination number as related to the "double blind" number by which your examination was graded, and that he will verify the correct addition of the scores awarded to you on each answer in the examination. * * *

(3) You will be afforded an opportunity to appear before the Board of Governors in their meeting at Juneau on Febuary 15 and 16th, 1968, at which time the mechanics and fairness of the process of grading will be further substantiated.

16. At this meeting existing grading procedures and general admission procedures were discussed and criticized. The board expressed a willingness to stipulate facts for the presentation of appellant's case to this court. At the meeting, appellant again requested a board hearing on his appeal.

sponse to your very able presentation before the Board, a motion was made to "make available to Mr. Peterson the questions and model answers and Peterson's answers to the September, 1967, bar examination in order to facilitate his preparation of an appeal as we understand the practice in the State of Michigan." This motion was defeated by a vote of 4 to 3. Therefore, the existing policy of the bar association not to furnish such materials has been continued.[17]

We are of the opinion that this record demonstrates denial of a fair hearing. In arriving at this conclusion, we decline to reach the denial of constitutional due process claims advanced by appellant. Rather, under our inherent powers governing admission to the practice of law and our general supervisory powers pertaining to admissions procedures, we have concluded that appellant was not accorded a procedurally fair hearing.[17a]

Of controlling significance is the circumstance that appellant was never given the benefit of any meaningful hearing in conjunction with his attempted appeals to the Board of Governors. Minimally, a hearing which would satisfy basic concepts of fair procedure required that appellant be furnished with copies of the examination questions, his answers, as well as the model answers which were used by the Committee of Law Examiners in grading the particular examination. These materials were never made available to the appellant for use in connection with either of his attempted appeals from the grading of the January 1967 and September 1967 bar examinations. Inaccessability of these docu-

ments precluded the possibility of obtaining an appellate hearing on the merits consonant with the requirements of a fair hearing.

The basic unfairness inherent in the procedures employed below receives illumination from the position taken by the Board of Governors of the Alaska Bar Association before this court. Here the board insists that as a precondition to the exercise of our review jurisdiction appellant must demonstrate that his failing grade was a product of fraud, imposition, or other serious grounds.[18] The hiatus in the bar's position stems from the fact that remaining unexplained are the mechanics by which the rejected applicant is to demonstrate that his failure was caused by fraud, imposition, or other serious grounds or circumstances. Considerations of anonymity or administrative burdens fail to furnish an adequate rationale for the board's position.[19]

In order for appellant to have been accorded a hearing at the appellate level which would have conformed to minimum standards of basic procedural fairness, he should have been given access to his examination questions, his answers thereto, and the model answers to the particular examination a sufficient time in advance of the appellate hearing before the board. Additionally, we are of the further view that in order to insure the availability of an intelligent review by the board, appellant should also have access to a representative sampling of the examination papers of other applicants who received overall passing and overall failing grades.[20]

17. The president of the bar association had characterized the required hearing as applying only to character challenges and not examinations, and as administrative rather than judicial. Minutes of Board of Governors, March 2, 1968.

17a. In re Houston, 378 P.2d 644 (Alaska 1963); In re Brewer, 430 P.2d 15 (Alaska 1967).

18. Along these same lines the Board of Governors make the parallel contention that the burden is upon appellant to

establish particular facts and circumstances which constitute grounds for review.

19. A total of 22 applicants took the January 1967 examination. The total number of applicants increased by one in regard to the September 1967 examination.

20. Due to the peculiar factual circumstances presented by the case at bar, we have included the requirement of "a representative sampling of the examination papers of other applicants who received

We reach this conclusion from a conviction that an applicant's rights in regard to the grading of his examination papers and his ultimate right to pursue the occupation of an attorney should be as fully protected as these same occupational rights are when questions of moral character or discipline of the appllicant are involved. In this regard we find the following portion of the Supreme Court's opinion in Schware v. Board of Bar Examiners[21] apposite. There Mr. Justice Black, in speaking for the court, said:

> We need not enter into a discussion whether the practice of law is a "right" or "privilege." Regardless of how the State's grant of permission to engage in this occupation is characterized, it is sufficient to. say that a person cannot be prevented from practicing except for valid reasons. Certainly the practice of law is not a matter of the State's grace. Ex parte Garland (U.S.) 4 Wall. 333, 379, 18 L.Ed. 366 [370].[22]

Thus, it is firmly established that a state is precluded from barring a person from the practice of law "in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."[23] After reaffirming this principle in Willner v. Committee on Character and Fitness,[24] the Supreme Court of the United States said:

> We are not here concerned with grounds which justify denial of a license to practice law, but only what procedural due process requires if the license is to be withheld. This is the problem which Chief Justice Taft adverted to in Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494, involving an application of a certified public accountant to practice before the Board of Tax Appeals. Chief Justice Taft writing for the Court said:
> " * * * The rules adopted by the Board provide that 'the board may in its discretion deny admission, suspend or disbar any person.' But this must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process."

In our view the foregoing articulates a view, the crux of which parallels the rationale of our decision in the case at bar, for we are not, at this posture of the litigation, concerned with the basis of the Board of Governors' rejection of appellant's ap-

---

overall passing and overall failing grades." We reached this conclusion because as to the January 1967 examination the passing score was fixed at 65, while on the other hand the passing score for the September 1967 examination was fixed at 70. Appellant scored 67.5 (representing a total of 730 points out of a requisite 756) on the September 1967 examination. In administering this "flexible passing score system," the Board of Governors' practice was to establish the passing score after ascertainment of the dip, or gap, in the sequences of the total scores in the particular examination.

21. 353 U.S. 232, 239 n. 5, 77 S.Ct. 752, 756, n. 5, 1 L.Ed.2d 796, 801 n. 5 (1957).

22. *See* Willner v. Committee on Character and Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); Hallinan v. Committee of Bar Examiners, 65 Cal.2d 447, 55 Cal.Rptr. 228, 421 P.2d 76 (1966).

In Ex parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366, 370 (1867), Mr. Justice Field, in speaking for the court, said:

Attorneys and counselors are * * * officers of the court; admitted as such by its order, upon your evidence of their possessing sufficient legal learning and fair private character. It has always been the general practice in this country to obtain this evidence by an examination of the parties.

23. Schware v. Board of Bar Examiners, 353 U.S. 232, 238–239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801 (1957); Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1955); Wieman v. Updegraff, 344 U.S. 183, 73 S. Ct. 215, 97 L.Ed. 216 (1952).

24. 373 U.S. 96, 103, 83 S.Ct. 1175, 1180, 10 L.Ed.2d 224, 229 (1963).

plication for admission to practice. On the other hand, our focus is upon the character of the hearing which the Board of Governors granted to appellant after he had been denied admission to practice on the grounds of failure to achieve a passing examination grade. In order for such a hearing to have attained the characteristics of a fair proceeding, the applicant must, sufficiently in advance of the appellate hearing, be given access to the examination questions, his answers thereto, the model answers, and an adequate sampling of both passing and failing examination papers.[25] Given these conditions, an applicant who has failed an examination will then be enabled to attempt to establish fraud, imposition, arbitrariness, mistake, or any other ground which warrants review of his examination answers.

■ The unsuccessful applicant carries a heavy burden in regard to any attempted

showing of abuse of discretion or improper conduct on the part of the law examiners in the grading of examination papers.[26] This criterion of burden of proof on appeal is a concomitant of bar examinations in general and the necessary discretion which is vested in the graders of essay type answers. On the other hand, we believe that a fair hearing necessitates that the applicant be permitted access to the materials we have mentioned in order that he be accorded the opportunity of meeting this stringent burden of proof.[27]

We therefore deny appellant's request that he be admitted to the practice of the law. In light of our resolution of the appellant's due process claims, the matter is remanded to the Board of Governors of the Alaska Bar Association for further proceedings in conformity with this opinion and this court's order of remand.[28]

25. Study of the procedures in 43 states indicates that 18 states permit a failing applicant to see his examination paper; 3 states permit him to see other applicants' papers; and 22 states permit the unsuccessful applicant to see the model answers.

26. Staley v. State Bar of California, 17 Cal.2d 119, 109 P.2d 667 (1941); In re Reid's Petition, 75 Nev. 84, 349 P.2d 446 (1960); In re Monaghan, 126 Vt. 193, 225 A.2d 387 (1967).

27. The present by-law, a summary of which is found in 6 Alaska L.J. 257 (September 1968), provides as follows:
An examinee-applicant who has failed the bar examination twice may obtain an abbreviated or an extended report of his paper upon paying a fee of $10.00 or $50.00 respectively. The report will be given to the examinee only on occasion after the second examination failure. The report will be written, unless an oral report is requested.
For the sum of $10.00, the failing examinee would receive a statistical summation of his grades and standing on the examination.
For the sum of $50.00, the failing examinee would receive a detailed writ-

ten analysis of problem areas on the examination. A failing examinee is allowed a period of three months after receipt of results of failing the examination to request an analysis of his paper.
Examinees taking and failing the January, 1968 examination are allowed three months from the date of the notice of this new procedure.

28. Alaska Bar R. II, § 10, in regard to the amendment of our bar rules, provides:
Proposals for amendment or abrogation of the Rules of the Alaska Bar respecting admission may be presented to the Supreme Court by petition of the Board of Governors or by a resolution of the Alaska Bar approved by a vote of a majority of the members present at a meeting of the Association.
It is respectfully suggested that the Board of Governors of the Alaska Bar Association, pursuant to Alaska Bar R. II, § 10, consider the submission of proposed amendments to our bar rules embodying and implementing the criteria which we have enunciated in the case at bar.