## Application of Arthur H. PETERSON, for Admission to the Alaska Bar Association.

### No. 1066.

Supreme Court of Alaska.

July 17, 1972.

---

Arthur H. Peterson, in pro per.

Mary F. La Follette, Anchorage, for Board of Governors of the Alaska Bar Assoc.

## OPINION

BONEY, Chief Justice.

This case is the renewal of Arthur H. Peterson's petition for admission to the Alaska Bar Association. Peterson wrote and failed the bar examinations given in January and September of 1967. In his first application,[1] this court declined to rule on the merits of Peterson's appeal until after the Board of Governors provided him a fair hearing.[2] Our concern then was only with the hearing and review procedures of the Alaska Bar Association which we held to be deficient.[3] We held that:

> In order for such a hearing to have attained the characteristics of a fair proceeding, the applicant must, sufficiently in advance of the appellate hearing, be given access to the examination questions, his answers thereto, the model answers, and an adequate sampling of both passing and failing examination papers.[4]

Peterson was provided with those materials as ordered. A hearing was held before an impartial member of the bar on April 17, 1970. The hearing officer, fully considering the arguments presented, submitted a Memorandum Decision to the Board of Governors of the Alaska Bar Association recommending that Peterson be denied both review of his examination papers and admission to the bar. Pursuant to its by-laws,[5] the Executive Director of the Alaska Bar Association then conducted a poll by mail of the members of the Board of Governors.[6] The Board voted to adopt the hearing officer's decision, and on July 14, 1970, the Executive Director so notified Peterson.

Peterson then petitioned the Board for reconsideration under the Alaska Administrative Procedure Act, AS 44.62.540. His request was denied.

In renewing his application before this court, Peterson questions the adequacy of the hearing afforded him by the Alaska Bar Association. He also alleges unfairness in the scoring system used whereby he failed first in January, 1967, when the passing score was 65, and again in September, 1967, when he scored a 67.5 but the passing grade was raised to 70.

We now must reach the merits of the issues raised by Peterson. While this court ultimately reserves the authority to determine whether or not an applicant should be admitted to the bar, considerable administrative responsibility has been delegated to the Alaska Bar Association.[7] The legislature has expressly included the Board of Governors of the Alaska Bar Association as an agency subject to the adjudicative procedures of the Alaska Administrative Procedure Act, AS 44.62.010–650.[8] That act provides that abuse of discretion by agencies is established on review if the agency's findings are not supported by "substantial evidence in the light of the whole record."[9] In order to prevent "dis-

---

1. Application of Peterson, 459 P.2d 703 (Alaska 1969).

2. [T]his court will not undertake to review the merits of an appeal until the unsuccessful applicant has been accorded a meaningful appellate hearing before the Board of Governors.
 *Id.* at 706 n. 7a.

3. [W]e are not, at this posture of the litigation, concerned with the basis of the Board of Governors' rejection of appellant's application for admission to practice.
 *Id.* at 710–711.

4. *Id.* at 711.

5. By-Laws of the Alaska Bar Association, art. VIII, § 5.

6. AS 44.62.600 provides that:
 A member of an agency qualified to vote on a question may vote by mail.
 AS 44.62.640(b) (1) and AS 44.62.330 (a) (22) define "agency" to include the Board of Governors of the Alaska Bar Association.

7. Application of Steelman, 448 P.2d 817, 819 (Alaska 1969); Application of Brewer, 430 P.2d 150, 152 (Alaska 1967); Application of Houston, 378 P.2d 644, 645 (Alaska 1963).

8. AS 44.62.330(a) (22).

9. AS 44.62.570(c) (2).

locations of the respective functions" of administrative agencies and the courts,[10] we have consistently adhered to the substantial evidence test as the appropriate scope of review with regard to appeals from administrative agencies.[11]

Peterson argues that he was again denied a fair hearing and that such a repeated denial constitutes grounds for this court to review more broadly both the examination system used in January and September of 1967 and his examination answers. With no transcript of the hearing, the Board itself merely voted by mail to adopt the hearing officer's proposed decision. Peterson did not appear before the Board. We do note that the Board complied with the provisions of the Alaska Administrative Procedure Act: the Board has the authority both to delegate its powers,[12] and to appoint hearing officers;[13] the Board, by an allowed method,[14] properly adopted the hearing officer's proposed decision.[15] Nevertheless, we are concerned by the manner which the Board reviewed the findings of the hearing officer.[16] However, while our inherent supervisory powers over admission to the bar would allow us to invoke a broader standard of review, we conclude that the substantial evidence test is appropriate in this case.

■ On this appeal, the arguments presented by Peterson are directed to the grading system. He questions first the use of a "flexible passing score" or "dip or gap" system of scoring.[17] The essence of his argument is that the use of any such system is violative of his rights to equal

protection and due process. While there was some evidence that such a system had been used, that evidence was specifically contradicted and the bulk of the evidence was that such a system had not been employed. The hearing officer found that a flexible system had not been used. There being substantial evidence in light of the whole record to support his finding, we uphold it and thus do not reach the constitutional issues raised.

■ Peterson next contends that the bar abused its discretion in adopting passing levels of 65% for January of 1967 and 70% for September of 1967. Peterson achieved a score of 67.5% in September and thus contends he was denied equal protection when the passing score was shifted.[18] We agree with the hearing officer that Peterson's argument can only have validity if he can demonstrate that his September paper is comparable to those papers which passed the January examination. Peterson has failed to make such a showing and the record thus supports the hearing officer's conclusion that Peterson was not treated unfairly in this regard.

■ We therefore conclude that the record supports the hearing officer in his findings and conclusions that the bar examinations in January and September of 1967 were fairly composed and properly administered and that Peterson has demonstrated no cause for a broader review of his answers. The hearing officer did, however, undertake to compare Peterson's answers with the model answers and the sampling of passing and failing papers.

---

10. Pan American Petroleum Corp. v. Shell Oil Co., 455 P.2d 12, 21 (Alaska 1969).

11. Anderson v. Employers Liability Assurance Corp., 498 P.2d 288, nn. 2 & 3, (Alaska 1972); Pan American Petroleum Corp. v. Shell Oil Co., 455 P.2d 12, 21 & n. 38 (Alaska 1969); Keiner v. City of Anchorage, 378 P.2d 406, 411 (Alaska 1963).

12. AS 44.62.340(a).

13. AS 44.62.350.

14. AS 44.62.600.

15. AS 44.62.500(b).

16. In the future, we would require that the Board have available the transcript of the hearing and allow the applicant to respond to the proposed decision submitted to the Board by the hearing officer. The applicant, upon request, should be allowed to appear before the Board.

17. Such systems involve setting the passing score at the point of the greatest dip or gap in the sequence of test scores.

18. One other failing applicant had a grade higher than Peterson's.

He concluded that such a comparison further impressed him that the examination had been fairly graded.

 While several courts have stated that under certain circumstances they would be prepared to read and grade examination papers,[19] we have found only one case in which a court actually undertook such a task.[20] In the interest of fairness, since Peterson was denied the sort of review of his hearing which we would have preferred and which we will require in the future, we have chosen to read the examination and his answers and to compare his answers with the model answers and the representative passing and failing answers.[21] We have concluded that a uniform standard was applied to all the papers; that the same standard was applied to Peterson's paper; that his paper was honestly and fairly graded; and that there was no apparent discrimination against him. We do not mean to imply that we would have given Peterson precisely the same scores he received on every answer. The graders are necessarily vested with certain discretion in grading answers to essay questions.[22] We merely find that such discretion has not been abused.

We therefore affirm the decision of the Board of Governors of the Alaska Bar Association that Peterson be denied admission to the bar.[23]

CONNER and ERWIN, JJ., not participating.

19. Application of Heaney, 106 Ariz. 391, 476 P.2d 846 (1970); Staley v. State Bar of California, 17 Cal.2d 119, 109 P.2d 667 (1941); In re Chachas' Petition, 78 Nev. 102, 369 P.2d 455 (1962); In re Myles, 64 Nev. 217, 180 P.2d 99 (Nev. 1947).

20. Cupples v. Marzall, 101 F.Supp. 579 (D. D.C.1952). The case differs greatly from the instant case in that it involved an examination for practice before an administrative office, and that the District Court felt compelled by statute to read and review the examination. On appeal, the decision was affirmed in its holding that the examination had been fair, but the Court of Appeals expressly refrained from deciding whether the trial court was compelled to read the examination questions and the applicant's answers and to review the grading. Cupples v. Watson, 92 U.S. App.D.C. 166, 204 F.2d 58 (1953).

21. It is only in light of the extraordinary procedural problem presented by this particular case that we undertake such review. Ordinarily, this court will not review bar examination papers.

22. Application of Peterson, 459 P.2d 703, 711 (Alaska 1969).

23. If Peterson desires to take the next bar examination to be offered on July 25–27, 1972, he will be allowed to. He need only notify the bar as soon as possible, and he may take the exam. All procedural requirements to the contrary as embodied in the bar rules are hereby waived.