514 P.2d 1297

**Petition of Jacobo E. PACHECO for a review of Petitioner's March and August, 1972 Bar Examination papers and for admission to the New Mexico Bar.**

**No. 9739.**

Supreme Court of New Mexico.

Oct. 12, 1973.

Jacobo E. Pacheco, pro se, for petitioner.

Olmsted & Cohen, Charles D. Olmsted, Santa Fe, for respondent.

## OPINION

**PER CURIAM:**

The petition filed in this proceeding seeks review and an evaluation by this court of petitioner's answers to the March and August 1972 bar examinations given and graded by the New Mexico Board of Bar Examiners (Board). The petitioner further requests an evidentiary hearing. The Board has asserted three defenses to the petition.

The third defense is that the petition fails to state a claim upon which the relief requested can properly be granted. A hearing was conducted on the Board's third defense and it is basically on a consideration thereof that we decide this cause.

In his petition, the petitioner makes a number of allegations concerning bar examinations, their effectiveness and their validity. In substance, these allegations are:

(1) The bar examination is an imperfect instrument for measuring an individual's qualifications.

(2) Present day bar examinations are unfair to minority group applicants because of the bar examiner's concern with business law as distinguished from problems of the poor. This unfairness is directed not only at minority group applicants; by concentrating on traditional subjects, the examinations, the examinations tend to penalize any person whose legal interests revolve around "unconventional" subjects. Thus, bar examinations discriminate against

persons whose culture or values are different from those of the examiner.

(3) The bar examination does not test legal research ability or skill in oral advocacy. In addition, it does not consider psychological, social, emotional or personal fitness; capacity to negotiate; adeptness in the use of procedural mechanisms of our legal system, or the ability to form and develop successfully the attorney-client relationships. All of these are crucial if the attorney is to serve the client and the public in a professional manner.

(4) The bar examination requires review of three or four years of study in order to cover all possible detailed questions, most of which necessarily will not be on the examination. The examination "tests" three or four years of study in three days.

(5) Bar examinations place heavy stress upon memorization of rules and superficial knowledge of the law rather than the analytical skills that are much more important for genuine legal ability. Rote learning is encouraged to the exclusion of analytical understanding.

(6) A bar examination sets very restrictive time limits for analyzing the questions, recalling relevant legal knowledge, and developing and writing convincing answers, which limits do not present a realistic law-practice situation and which encourage the mere memorization of legal points and cases.

(7) The examination is a "one-shot" qualification, failing to allow for the physical, mental, and emotional condition of the examinee on the three days of his life when he takes the examination.

(8) A bar examination requires not just good legal knowledge, analysis and logic, but a certain type of study and writing—the "black letter law" approach, an approach often quite repugnant to good, analytical minds.

(9) A bar examination results in unqualified individuals being admitted to practice and well-qualified ones being excluded, the frequency of which petitioner is not prepared to guess. Because the bar examinations are oriented toward memorization and superficial learning, it is not surprising that there is little correlation between the quality of a person's legal education and success on the examinations. In many states, the exams consistently produce a higher failure rate for graduates of distinguished law schools than for graduates of law schools that are generally considered to be of lower caliber.

(10) In essence, bar examinations are of no value—indeed, they cause more harm than good. They are an injustice to aspiring lawyers and to the public at large. Therefore, bar examinations should be abolished.

(11) It should perhaps be stressed that the petitioner is not complaining that the examinations were too difficult.

These contentions by petitioner raise the query as to whether he was denied due process and equal protection of the law. Similar complaints have been voiced and held to be groundless in other jurisdictions throughout the country, as in Chaney v. State Bar of California, 386 F.2d 962 (9th Cir. 1967), wherein the Court said:

"The Committee's examinations have in form consisted of sets of questions covering some 24 subjects of the law, calling for discussion or essay answers and thus requiring exercise and demonstration of analytical and reasoning capacity. It admittedly is the form of examination employed generally in the law schools of the country, and the form suggested for bar admission use in the American Bar Association's Recommended Standards for Bar Examiners

(1959), as follows: 'The major portion of the Bar examination should consist of questions in the form of hypothetical fact problems requiring essay answers.' * * * "

Rule 19 of the Rules Governing Bar Examiners, Bar Examinations and Admission to the Bar of the State of New Mexico reads:

"*Questions.* The major portion of the bar examination shall consist of questions in the form of hypothetical fact problems requiring essay answers. Questions shall not be generally designed to test knowledge uniquely based upon local case or statutory law; however, subjects of substantial local interest may be included. Questions will not be labeled as to subject matter. The identical questions should ordinarily not be repeated in subsequent examinations. Sufficient time will be allowed for answering the questions to permit the applicant to make a careful analysis of the facts and to prepare well-reasoned answers."

See also, Application of Peterson, 459 P.2d 703, 39 A.L.R.3d 708 (Alaska, 1969); Staley v. State Bar of California, 17 Cal.2d 119, 109 P.2d 667 (1941); Salot v. State Bar of California, 3 Cal.2d 615, 45 P.2d 203 (1935); In re Avery's Petition, 44 Hawaii 597, 358 P.2d 709 (1961); In re Reid's Petition, 76 Nev. 76, 349 P.2d 446 (1960).

Petitioner urges that he was denied equal protection of the law because the Board has established one procedure for reviewing complaints against denials of admission on the grounds of character and another procedure for reviewing failures on bar examinations. See Rules 10 and 23 of the Rules Governing Bar Examiners, Bar Examinations and Admission to the Bar of the State of New Mexico (28th Ed.1972).

Certainly a rational basis exists for the difference in the treatment of the two classes of applicants. A character evaluation is largely predicated upon reports of misconduct and upon judgments by those to whom an applicant's activities and behavior are well known. To a large degree the truth or falsity of reported acts of misconduct, questionable activities, or abnormal or unusual behavior can be tested and determined by investigations, hearings and appeals as provided in Rule 10, supra. Whereas, the testing procedures adhered to in conducting a bar examination are essentially objective and result in an essentially objective evaluation of the qualities being tested. As stated in Davis, Administrative Law Text, § 7.10, at 173 (3d Ed.1972):

"In some circumstances hearings [full due process hearings] are inferior to inspection, examination or testing. * * *

" * * * Bar examiners determine questions of fact—qualifications of applicants—by written examinations, but examiners' conclusions about intellectual qualification are almost never challenged. * * * "

Examiners' conclusions are obviously rarely challenged because the results reached by a bar examination are far more likely to result in fairer evaluations of intellectual qualifications than could be attained by checking transcripts of law school courses, credits and grades, by reading letters of recommendations from friends, or by hearing and evaluating evidence in a due process hearing.

There is a rational basis for according an applicant a full due process hearing in the area of character determinations, and denying such full hearing on the matter of the validity of determinations as to intellectual and learning qualifications arrived at by examination or testing in accordance with recognized procedures.

Petitioner further challenges the minimum passing score set by the Board and the methods by which the examinations are graded. The rules of this court referred to above do not specify a minimum passing score for its bar examination and the establishment in the Board of minimum passing scores and the examination itself has been left in the discretion of the Board. In the Matter of the Petition of Michael Alarid, Jr., et al., for Court Review of the

August 1972 Bar Examination Procedures and for Admission to the New Mexico Bar (filed June 22, 1973), this court stated:

"Petitioners quarrel with the establishment of 67 as a passing grade, but this is lower than the generally considered passing grade of 70 and was fixed by the examiners in an effort to insure fairness. The establishment of 67 as a passing grade represented an exercise of the collective judgment of a majority of the highly qualified examiners, including the experienced and highly qualified members of the Board of Bar Examiners. Had the decision been left to this Court, the passing grade might well have been higher."

This reasoning would apply to all of the bar examinations with which this petitioner is concerned.

■ Petitioner seeks a "meaningful," evidentiary hearing to demonstrate his qualifications. The Alarid case, supra, answers this point by stating that:

" * * * an applicant failing the examination shall be entitled to a *reasonable review* of (1) the questions on the examination; (2) the unsuccessful applicant's answers to the questions; and (3) a sample of a passing answer for each question on that examination. *The sole purpose of this rule is to permit an unsuccessful applicant to determine his deficiencies in order that he may be aided in his efforts in future examinations. * * *"* (Emphasis added.)

In Feldman v. State Board of Law Examiners, 438 F.2d 699 (8th Cir. 1971), footnote 6, at 703, the nature of a Board of Law Examiners and its proceedings, and the inappropriateness of the hearing process to its determinations, were referred to in the following language:

"A Board of Law Examiners clearly is not an administrative agency of the Executive Branch of government, but even were it, the Administrative Procedure Act would not require a hearing procedure for examiners since 5 U.S.C. § 554(a)(3) exempts from the hearing

process 'proceedings in which decisions rest solely on inspections, tests or elections;'. These methods of determination obviously do not lend themselves well to the hearing process. See Davis, Administrative Law (1959) Sec. 7.09, p. 124, mentioning Bar Examinations as one type falling within this category."

Furthermore, a number of jurisdictions have held that a review of one's bar examination answers will not be made by a court in the absence of an allegation that there was fraud, coercion, imposition or other misconduct on the part of the bar examiners in connection with an applicant admission to the bar. Application of Heaney, 106 Ariz. 391, 476 P.2d 846 (1970); Chaney v. State Bar of California, 386 F. 2d 962 (9th Cir. 1967); Staley v. State Bar of California, supra; Salot v. State Bar of California, supra; In re Monaghan, 126 Vt. 193, 225 A.2d 387 (1967). The petitioner herein has neither alleged nor demonstrated fraud, coercion or imposition on the part of the Board of Bar Examiners.

■ Petitioner further requests that the Board be directed to furnish him with copies of the March and August 1972 bar examination questions, model answers thereto, sample passing and failing answers, and petitioner's answers to said questions. Rule 23 of the Rules Governing Bar Examiners, supra, grants an unsuccessful applicant a reasonable review of the questions asked, his answers thereto, and a sample of a passing answer to each question. We understand petitioner has taken advantage of this right of review. We are of the opinion that this right is reasonable, and we decline to order the Board to grant petitioner's requests. We are not convinced that a rule requiring, or even permitting the Board to furnish an unsuccessful applicant the requested copies of examination matters would be reasonable or proper, or would in any way serve the purpose for giving bar examinations.

Petitioner in his reply brief in opposition to respondent's motion to dismiss refers to

alleged unprofessional conduct on the part of the Board's counsel. We deem it unnecessary to discuss these allegations.

Petitioner also questions the efficacy of bar examinations as being the proper device to determine his qualifications for admission to practice law, but it is a recognized means of testing some of the qualities essential in a successful practitioner and a means of demonstrating capabilities which are required of every practitioner for the protection of the public and the proper perpetuation of our legal system. See Chaney v. State Bar of California, supra. This precise question was before the Alaska Supreme Court in Application of Peterson, supra, and that court disposed of the contention in the following language (459 P.2d 703, 704, 39 A.L.R.3d 710, 711):

"Bar examinations are commonly used throughout the states as a test of one's fitness to advise and represent clients in legal matters. When one fails to pass an appropriate and properly administered examination, it is not unreasonable to say that he has demonstrated his lack of proficiency in law so as to justify denying him the right to be admitted to the bar. We believe that the legislature-imposed disqualification for one who took and failed to pass the bar examination * * * did have a rational connection with one's fitness to be admitted to the Alaska bar. * * *"

With respect to the same argument as is being made by petitioner herein, that his educational and work experience and recommendations from practicing lawyers are sufficient to qualify him for admission, regardless of his having failed to pass a bar examination, the Alaska court, in the same case, stated:

"We remain unpersuaded as to the efficacy of abandoning the clear and unambiguous legislative and judicial standard which requires passage of a bar examination given by the Alaska Bar. Adoption of appellant's position would in our view abolish any semblance of objective criteria and would substitute in its place rather vague and shifting standards which dramatically increase the probabilities of ad hoc admissions. If appellant's suggested standards were accorded primacy, we thereafter could not say with any degree of assurance that a particular applicant possessed the requisite qualifications to advise and represent clients in legal matters. In short, we choose to adhere to the rationale of Application of Brewer and reiterate our belief that 'When one fails to pass an appropriate and properly administered bar examination, it is not unreasonable to say that he has demonstrated his lack of proficiency in law so as to justify denying him the right to be admitted to the bar. * * *'"

We agree with the statements of the Alaska court, as quoted above, and which, together with our rules, amply support the position that petitioner has no cause for complaint.

Accordingly, we hold that there has been no denial of "due process" or "equal protection."

For the reasons stated herein the motion of the Board of Bar Examiners to dismiss the petition is granted.

It is so ordered.