[No. 43548.　En Banc.　September 4, 1975.]

RICHARD HOOBAN, *Appellant*, v. BOARD OF GOVERNORS OF THE WASHINGTON STATE BAR ASSOCIATION, *Respondent*.

*Richard Hooban*, pro se.

*Michael E. Jacobsen*, for respondent.

FINLEY, J.—This case involves a challenge to the Washington State Bar Examination conducted in February 1974. Appellant sought a writ of mandamus directing the Board of Governors of the Washington State Bar Association to refer appellant to this court as entitled to practice law. The Superior Court granted summary judgment in favor of the Board of Governors. We affirm.

Appellant qualified for and took the February 1974, bar examination which was composed of two parts: (1) a 2-day essay examination; and (2) a 1-day multi-state multiple choice examination.

The essay portion of the exam consisted of 24 questions of which an applicant was required to answer 18. These questions were graded on a scale of 0 to 10 points per question. To pass the essay portion of the examination, a score of 126 out of 180 points was required. Appellant scored 122.

The multiple choice portion of the examination consisted of 200 questions prepared by the Educational Testing Service of Princeton, New Jersey, in coordination with the National Conference of Bar Examiners. This portion of the bar examination is graded on a scale from 0 to 200 points. The multiple choice score received is then combined by a formula with the essay grade in such a manner that the multiple choice score constitutes one-third of the total examination score. Appellant failed the multiple choice portion of the exam in addition to failing the essay portion. As such, his combined essay and multiple choice score was obviously below passing.

Appellant subsequently requested that his examination be regraded. A Review Committee, composed of three members of the Committee of Bar Examiners who had not participated in the February 1974, bar examination, was appointed to regrade appellant's examination. The multi-state portion of the examination, however, apparently was not reviewed and appellant has not convinced us that it should have been reviewed. The essay portion of the examination was reviewed after the previous grades had first been obliterated and could not be known by the Review Committee. The total points given by the Review Committee were 121 as compared to the 122 points appellant had initially received. The Review Committee recommended to the Board of Governors not to change appellant's score; this recommendation was adopted.

Appellant then instituted the instant suit. The summary judgment subsequently entered in favor of the bar association primarily was on the basis of two affidavits—one submitted by the chairman of the Committee of Law Examiners and the other submitted by the chairman of the Review Committee.

Appellant's contentions relate generally to the constitutionality of bar examinations and to an alleged arbitrariness in the grading of his particular examination.

With respect to the constitutional challenge, appellant's theory is quite ambiguous. He relies primarily upon three cases: *In re Griffiths*, 413 U.S. 717, 37 L. Ed. 2d 910, 93 S. Ct. 2851 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969); and *Griggs v. Duke Power Co.*, 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849 (1971).

However, all of these cases are plainly inapposite to the facts of this case. *Shapiro v. Thompson, supra,* holds that the right to travel is a fundamental right and there is no compelling state interest to justify penalizing the exercise of that right by imposing a 1-year residency requirement as a prerequisite to welfare benefits. No such residency requirements are necessary to take the Washington bar examination and no other factor has been alluded to which would impermissibly impinge upon the right to travel. *In re Griffiths* is similarly inapplicable as it holds only that a state may not automatically exclude all aliens from the practice of law irrespective of their proficiency. Finally, *Griggs v. Duke Power Co., supra,* is not relevant since it involved impermissible racial discrimination in employment tests violative of the Civil Rights Act, 42 U.S.C.A. § 2000e-2 (1964). Herein, there has not even been an allegation of racial discrimination in the conduct or operative effect of the Washington bar examination nor is there anything in the record supportive of such a possibility. In short, the

cases simply do not support appellant's thesis that the bar examination was unconstitutional.[1]

■ The general rule is that courts will not set aside the determination of bar examiners as to an applicant's legal proficiency unless there is a showing of fraud, coercion, arbitrariness or manifest unfairness. *See generally Petition of Pacheco*, 85 N.M. 600, 514 P.2d 1297 (1973); *Application of Peterson*, 459 P.2d 703 (Alas. 1969); *In re Monaghan*, 126 Vt. 193, 225 A.2d 387 (1967); *Staley v. State Bar*, 17 Cal. 2d 119, 109 P.2d 667 (1941). Of course, if the denial of the right to practice law were based upon fraud, coercion, arbitrariness or manifest unfairness, then the basis for finding the applicant lacking in proficiency would be highly dubious and this could constitute a denial of due process. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957) (Frankfurter, J., concurring).

In any event, appellant contends that the Washington bar examination was arbitrary and capricious. This argument apparently is composed of four contentions: (1) bar examiners lack sufficient standards by which to judge scores (appellant urges that scores should somehow be correlated to law school grades); (2) essay examinations are not "perfect" because the grading thereof is subjective and may vary from one grader to another; (3) the multiple choice

---

[1] A stronger constitutional argument is one that appellant has not made. Appellant was allowed discovery of (1) all information in his bar examination file; (2) all instructions given to the Review Committee before its reexamination of appellant's examination; (3) the names and addresses of the members of the Review Committee; and (4) the scores and results of the reexamination conducted by the Review Committee. But apparently pursuant to RCW 42.17.310(1)(f), appellant was denied access to (1) the instructions given to the original graders; (2) model answers to the essay questions; and (3) sample answers and scores of other applicants who passed the examination. It could be argued that, as a matter of procedural due process, appellant is constitutionally entitled to the materials that were denied. *See Application of Peterson*, 459 P.2d 703 (Alas. 1969). *But see Whitfield v. Illinois Bd. of Law Examiners*, 504 F.2d 474 (7th Cir. 1974). However, since appellant has not made the argument, we will not consider it herein and the matter remains an open question.

portion of the examination encourages guessing which can be of no value in terms of predicting proficiency in the law; and (4) examiners have a vested interest in maintaining a low pass rate.

We are not persuaded by these speculative and unsupported allegations. A simple *allegation*, with nothing more, that the examiners have a vested interest in maintaining a low pass rate is insufficient to establish arbitrariness in the conduct of the examination. And there is nothing in the record indicative of fraud or dishonesty by the examiners for the purpose of restricting the pass rate. There is likewise nothing in the record to indicate any possible arbitrariness in the multiple choice questions.

■ Regarding the essay questions, we recognize that they carry with them some degree of subjectivity in their grading, but such exams have continuously been upheld by the courts. *Feldman v. State Bd. of Law Examiners*, 438 F.2d 699 (8th Cir. 1971); *Chaney v. State Bar*, 386 F.2d 962 (9th Cir. 1967); *cert. denied*, 390 U.S. 1011, 20 L. Ed. 2d 162, 88 S. Ct. 1262 (1968); *Whitfield v. Illinois Bd. of Law Examiners*, 504 F.2d 474 (7th Cir. 1974).

Circumstances could arise where the formulation or choice of essay questions or the method of grading them could be arbitrary and capricious. But, again, there is no evidence in the record herein indicative of arbitrary or capricious action. To the contrary, the affidavits submitted by the Washington State Bar Association, which are uncontroverted, establish the overall fairness of the bar examination process and the safeguards employed to guard against human error or arbitrary or capricious action. These affidavits establish that examiners are assigned the task of formulating questions in various fields of the law. Approximately 2 months before the examination, the examiners submit their proposed questions and answers covering the legal issues to a screening committee. The screening committee analyzes the questions and answers, examines them for clarity and then returns them to the examiners for

revision. The revised proposed questions are subsequently presented to a meeting of the full panel of the examiners where the questions and answers are again analyzed. If necessary, further revisions are then made.

In the grading of the answers, the examiners are encouraged not to assign extremely low grades to any failing paper. As a result it is extremely rare for an applicant to receive failing grades below five or six points; a passing grade is seven points. It is also the practice of the bar examiners to meet and review borderline failures after all grades have been tabulated. Where, in the judgment of the examiners, increases in the essay grades are merited, an applicant may be passed. In appellant's case, it would have required six additional essay points to bring his combined score to the passing mark. It was concluded that an increase of six points was completely unmerited.

In addition, appellant was afforded even further review of his examination. At his request, his 18 essay grades were reviewed by a Review Committee, composed of three experienced members of the Committee of Law Examiners who did not participate in the February 1974, bar examination. Each of the three members of this Review Committee separately graded six answers. After the grading was completed, the grades assigned by the Review Committee were compared with the grades assigned by the original graders. The Review Committee as a whole gave 10 of appellant's 18 answers the same grade as that given by the original examiners. The grades given to the other eight answers varied by one to two points from the grades originally given by the bar examiners. Whenever a member of the Review Committee ascribed a grade to an essay question different from that originally given by the bar examiners, then the other two members of the Review Committee also reviewed the appellant's answers to those questions. In each instance, this double check resulted in agreement to abide by the grade given by the member of the Review Committee. As noted earlier, the Review Committee gave appellant a total

of 121 points as compared to the 122 points he had initially received.

We think that these facts, established by the affidavits submitted by the Washington State Bar Association, sufficiently establish the general fairness of the bar examination. Appellant has not presented any facts indicative of arbitrariness. Thus, no genuine issue of fact was shown and the summary judgment was accordingly proper. *W.G. Platts, Inc. v. Platts*, 73 Wn.2d 434, 438 P.2d 867, 31 A.L.R.3d 1413 (1968).

Respondent has made additional assignments of error, but they are without merit and will not be discussed.

For the foregoing reasons, the judgment of the trial court should be affirmed. It is so ordered.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.